## Frank G. Lucas, Appellee, v. Louis Schwartz and Rosie Schwartz, Appellants.

### Gen. No. 31,215.

1. FORMER ADJUDICATION—*hearing on merits in former action essential.* A record showing that in an action between the same parties on the same cause of action in another court, judgment entered by plaintiff by confession was vacated by stipulation of the parties and that subsequently the cause was dismissed on the plaintiff's motion will not support a plea of *res adjudicata* in another action between the same parties, since it shows that there was no hearing on the merits.

2. BROKERS—*proof of signing of contract for exchange of property as making prima facie case.* In an action by a realty broker to recover commission claimed under a contract to find one who was ready, able and willing to buy or exchange with defendants, their signing a contract for an exchange with the party furnished by plaintiff makes out a prima facie case for him which is overcome by proof that the exchange contract was not carried out by reason of the inability of the party furnished by plaintiff to give good title.

3. BROKERS—*what performance entitles to sue for commission.* A broker may sue a seller for commission for furnishing a customer for realty exchange, ready, able and willing, if he prove those qualities even though the customer and the seller did not enter into a written contract for the exchange.

4. BROKERS—*elements sufficient to sustain recovery of commission.* A prima facie case made by a realty broker by proof that his client and a customer furnished by the broker ready, able and willing to exchange, entered into a written contract of realty exchange, is made a complete case by proof that said contract is valid, enforceable against the buying customer.

5. BROKERS—*right to commission as affected by client's inability to perform.* A broker will be entitled to a commission for furnishing a customer ready, able and willing to exchange realty with his client if the latter signs a contract of exchange although afterwards he is unable to fulfil, because of his own defective title.

6. BROKERS—*right to commission as affected by customer's refusal to perform.* A mere refusal of the customer furnished by a broker to carry out a written contract to exchange realties will not release the broker's client from paying the broker's commission.

7. BROKERS—*effect of customer's inability to give title.* Absolute inability on the part of a customer furnished by a realty broker to carry out his written contract to exchange realties due to his own irremediably defective title, excuses the broker's client for refusing to pay his broker commission for furnishing the customer.

Appeal by defendants from the Municipal Court of Chicago; the Hon. C. F. MCKINLEY, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed. Opinion filed March 2, 1927.

LARAMIE & SHERWIN, for appellants.

JAMES H. McFARLAND, for appellee; RALPH S. Mc-FARLAND, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff, Lucas, a real estate broker, brought this action of the first class in the municipal court of Chicago, against the defendants, seeking to recover $1,200 which he claimed was due him from them as a real estate commission by reason of his services in bringing about a contract for exchange of properties between them and one Stukis and wife. The issues were submitted to a jury, resulting in a verdict for the

plaintiff assessing his damages at the amount claimed. Judgment for the plaintiff was entered on that verdict and the defendants have perfected this appeal.

The record shows that the defendants engaged the plaintiff to bring about either a sale or exchange of certain property they owned. The plaintiff showed the defendants several pieces of property and, finally, one which was owned by Stukis. This resulted in the defendants entering into a written contract with Stukis and his wife, wherein the defendants agreed to convey their property to Stukis and wife, and they agreed to convey their property to the defendants. This contract contained a paragraph relating to brokerage fees, which recited that Stukis and wife were to pay the plaintiff a fee of $750 and the defendants were to pay him a fee of $1,200. The plaintiff was not a party to that contract. In their pleadings the defendants admitted that they had engaged the plaintiff to serve them in finding a purchaser of their property, or one who would make an exchange, and they did not deny the plaintiff's allegation to the effect that they had promised to pay him a commission of $1,200. When the defendants concluded their contract with Stukis and his wife, they gave the plaintiff a judgment note for $2,500, to secure the payment of the commission they had promised him. After the contract was entered into between the defendants and Stukis and his wife, examination of the title of the Stukis property developed the fact that it was materially defective and Stukis was not able to show good title in him. This resulted in the deal falling through.

The record in this case shows that Lucas demanded his commission from the defendants and they declined to pay it, claiming that the agreement between them was that there was to be no commission paid by them to him unless and until their deal with Stukis went through and the deeds to the two properties were mu-

tually exchanged.  Lucas then confessed judgment on the note of the defendants, in the circuit court of Cook county.  The defendants then appeared in that case in the circuit court and the judgment which Lucas had obtained was vacated and that suit was dismissed.  The plaintiff then instituted the action at bar against the defendants.

It is first contended by the defendants, in support of their appeal, that the judgment entered in the circuit court of Cook county, in the case above referred to, in which the parties were the same as they are here, is conclusive of the issues involved in the case at bar; and in support of this contention counsel for the defendants state that the judgment which the plaintiff procured in the circuit court case was there vacated and that suit was dismissed "after a full hearing" of the contention there interposed by these defendants, substantially to the same effect as the contention they are making here.  The repeated assertions of counsel to this effect, in their brief, cannot supply the entire lack of evidence to support it in the record.  The record shows that at the February term of the circuit court in 1924, the defendants submitted their motion in the case in that court, to vacate the judgment which had been entered against them the previous November, and, "upon stipulation of the parties," it was ordered that the judgment for the plaintiff, theretofore entered in that case against these defendants, be vacated; and the record further shows that at the same term, namely, on March 6, 1924, on motion of counsel for plaintiff, it was ordered that the cause be dismissed.  Not only does the record fail to show that there was a full hearing, or any hearing, on the merits of the issues involved in that case, but the record, as above referred to, indicates the contrary.  Such a record will not support a plea of *res adjudicata* interposed in a later action between same parties.  *Hallaboards v. City of Pinckneyville,* 147 Ill. App. 120.

As to the contention of the defendants that their agreement with the plaintiff was to the effect that they were to pay him no commission unless their deal with Stukis went through, and the exchange of properties involved in their contract with him was actually made, the record shows that the plaintiff contended the contrary, his version of the agreement being that nothing had been said between them on that point. The parties submitted testimony in support of their respective positions, making this issue of fact one for the jury to pass upon, and the record is not such as to enable this court to disturb the verdict of the jury, so far as that point is concerned. But even on the plaintiff's theory, namely, that he was engaged by the defendants to find a purchaser. of their property or one who would exchange other property for theirs, with nothing being said to the effect that a commission was to be paid, only in case such a deal was concluded, we are of the opinion the judgment for the plaintiff cannot stand. On the plaintiff's theory of the case, he was obliged to find some one ready, willing and able to buy the property of the defendants, or convey other property to them in exchange for theirs. The trial court held that, it being shown that the defendants had entered into a written contract with Stukis and his wife,—the purchasers procured by the plaintiff,—a prima facie case was made out in favor of the latter, to the effect that he had procured parties ready, willing and able to make a transaction agreeable to the defendants. In our opinion, that ruling was correct. But when it was shown that the contract entered into between the defendants and Stukis and his wife was not carried out, because Stukis was not able to make out a good title in him, to the property he had agreed to convey to the defendants in exchange for theirs, the plaintiff's prima facie case was not only overcome but the situation was shown to be one in which the plaintiff could not recover.

Counsel for the defendants attempt to inject an element of fraud and deception into this case, by repeatedly asserting, in the brief filed by them in this court, not only that Stukis did not have good title to this property but that the plaintiff knew it, when he procured the defendants to enter into their contract with Stukis and wife.  This is another issue which finds support only in counsel's assertions, for we have been unable to find a particle of evidence in the record, either showing or tending to show, that such was the fact.

Where a seller of property engages a broker to procure a purchaser or one willing to exchange property with the seller, on the terms offered by the latter, and the broker procures a buyer who is ready, willing and able to buy or exchange, at the terms offered, the broker will be entitled to his commission, even though the principal parties do not enter into a contract of purchase and sale, or of exchange.  In such a case, where the broker sues the seller for his commissions, he is obliged to prove that the purchaser he procured was ready, willing and able to complete the transaction at the terms offered by the seller.  If the seller accepts the buyer presented by the broker, either upon the terms offered or others mutually agreed upon, and a contract is entered into between them, the broker's commission is earned; *provided, the contract is a valid one which is enforceable against the buyer.*  If the contract is never carried out because the seller, who has engaged the services of the broker, cannot show good title in him to the property offered for sale, the broker will, nevertheless, be entitled to his commission.  But if the contract entered into by the principals is never carried out because, it being one calling for an exchange of property, the purchaser is not able to show good title in him to the property he agreed to exchange for the seller's property, the broker will not be entitled

to receive his commission, because the contract which his client, the seller, entered into with the buyer he procured was not one which was valid and enforceable against such buyer. Of course, the broker would, nevertheless, be entitled to his commission, if the contract entered into was not carried out because the buyer simply refused to perform. These rules were laid down by our Supreme Court in *Wilson v. Mason*, 158 Ill. 304. In that case a broker sued to recover a commission from a seller for services rendered in procuring a purchaser for certain property owned by the seller. The purchasers whom the plaintiff claimed to have procured were certain executors of an estate. These executors, as purchasers, had entered into a written contract of purchase and sale with the defendant seller. After the contract had been entered into, the executors made some objection to the title, and, because of this alleged defect, they declined to complete the purchase. The objection which had been raised was involved in some litigation and the subsequent determination of that litigation was such as to nullify the objection. In the suit brought by the broker against the seller, to recover a commission, it was held that even though the seller had entered into a written contract with the purchasers, the broker could not recover because the contract which the parties had entered into was not enforceable as against the purchasers which the broker had procured, inasmuch as those purchasers, as executors, were without authority to create any liability on the part of their estate, or enter into any executory contract for the purchase of property, which would be binding upon or enforceable against the estate.

In *Fox v. Ryan*, 240 Ill. 391, our Supreme Court referred to and quoted from *Wilson v. Mason, supra,* with approval. In the *Fox* case, a broker was suing a seller for commissions he claimed he had earned by

reason of his services in procuring a buyer for certain stocks which the seller had engaged the broker to dispose of. There, the two principals had entered into a contract of purchase and sale, which, however, was never carried out, not for the reason that the contract was not valid and enforceable as against the buyer, but apparently simply because the buyer failed to make the payments called for by the terms of the contract. Such being the state of the facts in that case, the court held the broker was entitled to his commission, and in the course of its opinion said that ''where the seller accepts the purchaser and enters into a valid contract of sale with him, the broker's commission is earned whether the purchaser subsequently fails to perform his contract and make the payments agreed upon or not.''

In *Rushkiewicz v. St. George*, 226 Ill. App. 310, this court cited the *Fox* case and followed it, the facts there being such as to make the *Fox* case applicable. In the case at bar, however, a different situation of fact is presented, for here the contract entered into by the principals was not performed, not merely because the purchaser, procured by the broker, refused to perform it, but because it developed that he was without the power to perform it because it was admitted he did not have the thing he had contracted to convey, namely, good title to his property. That being the case, the contract which the plaintiff's principals, Mr. and Mrs. Schwartz, had entered into with Mr. Stukis and his wife, who had been procured by the plaintiff, was not one which was valid and enforceable, as against the latter. The facts involved here, therefore, are similar to those which were involved in *Wilson v. Mason, supra,* and, therefore, the plaintiff is not entitled to the commission he claims.

Another case presenting a similar state of facts is *Jenkins v. Hollingsworth & Tabor,* 83 Ill. App. 139.

There, just as in the case at bar, the plaintiff was seeking to recover a commission from the defendant seller, who had entered into a contract of exchange with a buyer who had been procured by the plaintiff, and it developed that the buyer did not have good title to the property he had contracted to convey. As in the case at bar, so in the case cited, it was admitted that the contract of exchange which the parties had entered into was never consummated, because of the defective title above-mentioned. The court held that although the broker would be entitled to his commission, if the buyer merely refused to carry out the contract, that was not the case where it was admitted that the buyer had no title to convey, for in such a situation the contract which the seller had entered into with the buyer was not one which was valid and enforceable against the buyer.

The record in the case at bar conclusively shows that the contract which the defendants entered into with Stukis and his wife was not a valid, enforceable contract. In the course of the hearing in the trial court in this case, counsel for the plaintiff frankly stated: "We admit that the deal did not go through because Stukis had the title in such shape that they could not go through with the deal." The plaintiff testified that Stukis told him he could not "clean up the title," and the defendants declined to take the title in the shape it was in. The defendant, Mrs. Schwartz, testified that "Stukis said he could not give us a clear title to his property and that the deal could not go through." The records of the Chicago Title & Trust Company, showing the condition of the title to the Stukis property, were admitted in evidence, with the concurrence of counsel for the plaintiff. These showed the defective condition of the Stukis title, which it will not be necessary to go into here. The defendant Schwartz testified that after waiting a long time for Stukis to complete

the transaction the parties finally got together, and Stukis stated that "he couldn't close the deal,—he couldn't clear the title," and he said the deal was off. That being the situation, Stukis could not have maintained a bill for specific performance against the defendants, for he admittedly was not in a position to show that he himself was in a position to perform. Such being the case, the defendants also could not have successfully compelled specific performance. Therefore, the contract was not such a contract as would entitle the plaintiff to the commissions he claimed. *Jenkins v. Hollingsworth & Tabor,* 83 Ill. App. 139; *Carroll v. Leafgreen,* 170 Ill. App. 328.

In view of the admission of counsel for the plaintiff, to the effect that the contract between the parties was not carried out, because Stukis did not have a good title to the property he contracted to convey, and in view of the uncontradicted evidence to the same effect, submitted by the defendants, we are of the opinion that the trial court erred in denying the motion submitted in behalf of the defendants at the close of all the evidence, requesting an instructed verdict in their behalf.

For the reasons stated the judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*

TAYLOR, P. J., and O'CONNOR, J., concur.