City of Chicago, in Trust for the Use of Schools, Plaintiff, v. Alex Robertson, et al., Defendants.
On Appeal of Jay Goran, as Trustee, Defendant-Appellant.

Gen. No. 49,289.

First District, Third Division.

April 9, 1964.

Block and Solomon, of Chicago (Irving L. Block and Kenneth H. Denberg, of counsel), for appellant.

Braden, Hall, Barnes & Moss, and Walter Gladney and Maggie Gladney, all of Chicago (Zedrick T. Braden, Sr. and Zedrick T. Braden, Jr., of counsel), for appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order in a condemnation suit, awarding a portion of a condemnation award to

the assignees of the purchasers under articles of agreement for a deed. The sole issue is whether a purchaser who still owes more on his contract for purchase than the amount awarded in condemnation is nevertheless entitled to a portion of the award.

On July 30, 1954, Jay Goran, as trustee and holder of the legal title to property at 4230 Oakenwald Avenue, Chicago, Illinois, entered into articles of agreement for a deed with Clarence L. Echols and Juanita L. Echols, his wife, and Mervyn Simms and Lorene Simms, his wife, under which the purchasers agreed to pay $16,500 for the property—$1,500 down and $120 a month until the purchase price and interest thereon was fully paid. Under the agreement, the seller retained the title until complete performance by the purchasers. In December 1956 the purchasers assigned their interest to Walter Gladney and Maggie Gladney, hereinafter called "assignees," who thereafter occupied the premises and made payments until June 30, 1962.

On July 27, 1962, this suit was filed, seeking to condemn the property in question for school use. On January 10, 1963, a judgment for $8,000 was entered on a jury verdict, which sum was deposited with the County Treasurer of Cook County. That sum is less than the unpaid balance due on the contract for the sale of the property, which on January 10, 1963, amounted to $9,736.72.

The assignees thereupon filed a petition, praying among other things that an order be entered directing the County Treasurer to pay over to the petitioners such sums as the court deemed equitable. Appellant filed an answer and cross-petition, and the assignees filed an answer to the cross-petition. After a hearing, the court found that an equitable conversion had in fact taken place, but that equitable considerations required that the assignees share in the condemnation

award to the extent of $3,000, and that the balance of $5,000 plus costs should be paid to the appellant. The court further found that there was no just reason for delaying enforcement or appeal.

This case presents the classic question of who bears the risk of loss between vendor and purchaser when a taking by eminent domain intervenes between the time a contract of sale is made and the time the deed is delivered. The assignees argue on appeal that the order of the trial court makes an equitable distribution of the proceeds of the condemnation award and should not be reversed because the condemnation has made it impossible for the assignees to realize the fruits of their bargain, although they have made payments for interest, taxes, insurance and improvements. The law in Illinois is otherwise.

In Stevenson v. Loehr, 57 Ill 509, an action on a promissory note executed by the purchasers to the vendor, it appeared that after the contract of sale had been entered into and before the giving of the deed, a portion of the premises was condemned by a railroad company. Holding that the condemnation proceedings did not create an encumbrance for which damages could be recovered in an action on the covenants of the deed and therefore could not be used as a defense to the action on the note, the court said, p 510:

> "We are of the opinion, where a person, having a perfect title to a tract of land, sells it, giving a contract for the deed of general warranty to be made on final payment, and between the sale and the making of the deed a portion of the premises is condemned, under the right of eminent domain, for a railway track, the incumbrance would not be one for which damages could be recovered in an action on the covenants in the deed. Although

243

■■■■■■■■■■■■■■■■■

the legal title does not pass from the vendor by the contract of sale, he holds it from that time merely as security for the payment of the purchase money. The purchaser becomes the equitable and substantial owner, subject only to the right of the vendor to the payment of the purchase money. If allowed to take possession, as is almost universally the case in this State, the vendor can not oust the purchaser so long as the latter complies with the terms of the contract, and the purchaser is liable for the taxes assessed after he takes possession. The relation of the parties is not substantially different from what it would have been if the vendor had given a deed and taken back a mortgage to secure the payment of the unpaid purchase money, except that where only a contract is given, the vendor can insert terms reserving to himself a more efficient remedy in case of default in payment."

We therefore see no reason why a vendor in an agreement for a deed contract should be treated any differently than the mortgagee in that situation. The law is clear in Illinois that proceeds of an award for the appropriation of land for public use are deemed a substitute for the property taken and that a mortgagee has an equitable lien on the funds to the extent of his claim. The underlying theory is that since the parties are powerless to prevent the taking and the mortgagee loses his lien on the part taken, the award equitably stands in the place of the land taken. City of Chicago v. Salinger, 384 Ill 515, 52 NE2d 184.

■■ Condemnation does not relieve the purchaser of his obligation to pay the purchase price. As the court said in Stevenson v. Loehr, supra, at p 512:

"The condemnation of the land under the right of eminent domain is, in fact, for the purposes of the present question, a sale of it by the purchaser, for which the law secures to him, and he is supposed to receive, full compensation. It is in the nature of a forced sale, it is true, but the responsibility is not upon the vendor. All persons hold their lands subject to the exercise of this right of eminent domain. . . ."

The court presents a hypothetical question (p 512):

"Suppose the land has doubled in value between the sale and the condemnation. Suppose it has been bought at $100 per acre, and has risen to $200, and the railway takes five acres and pays $1000. Here is a profit of $500, and certainly no one would pretend that the vendor would be entitled to it. He could not, by remitting to the vendee the purchase money at the rate of $100 per acre, claim the right to receive the condemnation money at double that rate."

It is clear, therefore, that the same principles apply whether the market value of the land goes up or down between the date of the contract and the time of condemnation. The court cannot remake the contract of the parties.

The views expressed in this opinion are consistent with the Uniform Vendor and Purchaser Risk Act, Ill Rev Stats, c 29, §§ 8.1–8.3 (1963) adopted in July 1963, which is as follows (§ 8.1(b)):

"(b) If, when either the legal title or the possession of the subject matter of the contract has been transferred, all or any part thereof is destroyed without fault of the vendor *or is taken by eminent domain,* the purchaser is not thereby

245

relieved from a duty to pay the price, nor is he entitled to recover any portion thereof that he has paid . . ." (Emphasis supplied.)

The order of the trial court is reversed and the cause is remanded with directions to award the entire amount of the condemnation award of $8000 to the appellant, Jay Goran, as trustee.

Order reversed and cause remanded with directions.

DEMPSEY and SULLIVAN, JJ., concur.