HAROLD T. O'BRIEN, Plaintiff-Appellee, *v.* ROBERT KAWAZOYE *et al.*, Defendants-Appellants.—(KAPLAN & ASSOCIATES, Plaintiff-Intervenor-Appellee.)

(No. 60949;

First District (5th Division)—April 11, 1975.

George Kita, of Chicago, for appellants.

Marvin A. Miller and Kaplan, Ellis, & Sorosky, both of Chicago (James L. Kaplan, of counsel), for appellee Harold T. O'Brien.

I. R. Strizak, of Chicago, for appellee Kaplan & Associates.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This cause of action arises out of a suit for specific performance of a real estate contract entered into between plaintiff-purchaser (O'Brien)

and defendant-sellers. Plaintiff amended his claim for specific performance to one for damages and then moved for summary judgment. Kaplan and Associates (Kaplan) intervened, seeking a sales commission pursuant to an exclusive listing agreement and moved also for summary judgment. Both motions were granted, and this appeal challenges the propriety of these rulings. The facts are essentially as follows.

On May 9, 1972, defendants entered into an exclusive listing sales agreement with Kaplan for a period of 60 days. During this interval, O'Brien contacted Kaplan and made an offer to purchase the property in question for $50,000. This was not acceptable to defendant because he had to clear certain building code violations at a cost of some $3,000. Accordingly, O'Brien's offer was increased to $53,000 and a contract to that effect was drafted on July 29, 1972. This was a standard form contract for the sale of residential property containing, *inter alia,* the following provisions:

> "4. This contract is subject to the condition that Purchaser be able to procure within 30 days a firm commitment for a loan to be secured by a mortgage or trust deed on the real estate in the amount of $43,000, or such lesser sum as Purchaser accepts, with interest not to exceed 8½% a year to be amortized over 20 years, the commission and service charges for such loan not to exceed 1%. If, after making every reasonable effort, Purchaser is unable to procure such commitment within the time specified herein and so notified Seller thereof within that time, this contract shall become null and void and all earnest money shall be returned to Purchaser; provided that if Seller, at his option, within a like period of time following Purchaser's notice, procures for Purchaser such a commitment or notifies Purchaser that Seller will accept a purchase money mortgage upon the same terms, this contract shall remain in full force and effect.
>
> 5. The time of closing shall be on September 1, 1972, or 20 days after notice that financing has been procured if above paragraph 4 is operative, or on the date, if any, to which such time is extended by reason of paragraph 2 of the Conditions and Stipulations [relating to objections to marketability of title] hereafter becoming operative (whichever date is later), unless subsequently mutually agreed otherwise, at the office of lending agency or of the mortgage lender, if any, provided title is shown to be good and is accepted by Purchaser."

There were certain additional conditions and stipulations, including the following:

> "7. Time is of the essence of this contract.

8. All notices herein required shall be in writing and shall be served on the parties at the addresses following their signatures. The mailing of a notice by registered or certified mail, return receipt requested, shall be sufficient service."

The contract was signed only by O'Brien, whose address followed his signature. Thereafter, on August 21, 1972, a rider was executed containing only a warranty that, to the best of sellers' knowledge, there were then no existing building code violations. The rider was signed by all parties to the contract.

O'Brien did not notify defendants of his inability to obtain a mortgage commitment or to terminate the contract, as provided in paragraph 4. In fact, no notice of any kind was given defendants until O'Brien made a demand on October 14, 1972 that defendants convey the property to him. Furthermore, although the July 29 portion of the contract provided that earnest money of $5,300 had been paid, it appears from O'Brien's Exhibit 2 that the $5,300 was not deposited with Kaplan until October 14, 1972, the date on which O'Brien made demand for conveyance of the property.

While defendants acknowledged receipt on October 14, 1972, of the written demand to convey, they countered that during the first week of September, 1972, O'Brien was notified to appear at Chicago Title and Trust Company on September 18, 1972, to set up an escrow to close the transaction, and he was informed that his failure to appear would cause defendants to treat the contract as terminated. During his deposition and in answers to interrogatories, defendant Robert Kawazoye stated he delivered this notice to Kaplan. O'Brien stated he never received any such notification. Condition and Stipulation 8 of the contract, however, provided for service of notice on O'Brien at the address following his signature in the contract. His address, which appears on the ʾJuly 29 portion of the contract, differs from that of Kaplan.

O'Brien's demand of October 14 for conveyance called for closing the transaction on November 14, 1972. Defendants did not appear and deliver the warranty deed, as called for in the contract, and O'Brien then filed a complaint for specific performance of the August 21, 1972 contract. The court heard evidence *ex parte* and determined that a valid contract existed between the parties and ordered defendants to perform in accordance with its terms.

Within 30 days after this judgment order was entered, O'Brien learned that defendants had conveyed the subject property to third parties on December 16, 1972. O'Brien immediately filed a post-trial motion to vacate the judgment, which was granted, and he was given leave to amend his complaint. Thereafter, he filed his verified amended complaint, seeking a trust on all sums received by defendants in excess of the con-

tract purchase price of $53,000. Defendant Robert Kawazoye filed a verified answer, which admitted that on August 21, 1972, O'Brien and defendants entered into a written agreement for the purchase and sale of the property in question for $53,000, but denied that O'Brien had performed all conditions precedent to the contract in that he had failed to obtain financing within 30 days and had breached the contract by not appearing as requested to close the transaction on September 18, 1972.

In his deposition, Robert Kawazoye admitted that during the first week in September another purchaser was sought, and on September 20, 1972, he executed another written agreement to sell the same property for $55,000 to third parties, which was closed on December 16, 1972.

O'Brien's motion for summary judgment included the pleadings, the deposition of Robert Kawazoye, answers to interrogatories, a request to admit the genuineness of various documents and the sworn affidavit of Richard Kaplan. In objecting thereto, defendants contended that (1) O'Brien was notified to appear for closing of the transaction on September 18, 1972, and was informed that the contract would be terminated if he failed to appear; (2) O'Brien did not appear, and thus the contract was terminated; (3) the July 29 portion of the contract expressly provided that the contract was subject to O'Brien being able to secure a mortgage in the amount of $43,000 within 30 days; and (4) not only was this not accomplished, but the evidence showed that no application for loan was made within that time; in fact, not until October 19, 1972.

On July 2, 1974, after hearing arguments of counsel, the trial court ordered summary judgments in favor of O'Brien for $2,230.20[1] and for $3,180 in favor of Kaplan. No question is raised on appeal as to these dollar amounts.

Defendants filed a timely notice of appeal, but the record was not filed with this court until October 2, 1974, some 68 days after the filing of defendant's notice of appeal. Thereupon, O'Brien moved to dismiss the appeal for failure to file the record within the 63-day limit established by Supreme Court Rule 326. (Ill. Rev. Stat. 1973, ch. 110A, par. 326.) This court denied the motion prior to oral argument.

OPINION

We will first consider the contention of plaintiffs that this appeal should be dismissed for failure to timely file the record. It is asserted that Rule 326 sets forth the "jurisdictional requirement" of filing the record within 63 days after the filing of a notice of appeal. Although dismissal of an appeal for failure to timely file the record is proper

---

[1] $2,000 plus costs of $230.30.

(*Swift Agricultural Chemicals Corp. v. Marten,* 4 Ill.App.3d 60, 280 N.E. 2d 268; *Mount Vernon Girl Scout Council v. Girl Scouts of United States of America,* 55 Ill.App.2d 443, 205 N.E.2d 474), we note that Supreme Court Rule 301 (Ill. Rev. Stat. 1973, ch. 110A, par. 301) provides that, other than the filing of a notice of appeal, "No other step is jurisdictional." Thus, having jurisdiction, we choose to proceed to the merits of this appeal.

■■ · In this regard, we are concerned with the propriety of the summary judgment. Initially, we note that before such a motion can be allowed, the right of the moving party must be clear and free from doubt and determinable solely as a question of law (*J. J. Brown Co. v. J. L. Simmons Co.,* 2 Ill.App.2d 132, 118 N.E.2d 781; 23 I.L.P. *Judgments* § 77 (1956)) and that summary judgment is only proper where the pleadings, depositions, exhibits, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. *Conrad v. Logan,* 4 Ill.App.3d 983, 283 N.E.2d 56.

Defendants' first objection to the summary judgment is that the contract was affirmatively cancelled by notice served on O'Brien, requesting closing in escrow on September 18, 1972, and advising him that the contract would be treated as terminated if he failed to appear. Defendant Robert Kawazoye, in his deposition, testified that the written notice was mailed to O'Brien in care of and to the address of Kaplan. O'Brien, however, stated in his deposition that he received no notice.

■■ An examination of the contract reveals that Condition and Stipulation 8 provided that notice "shall be served on the parties at the addresses following their signatures. O'Brien's address was on that portion of the contract dated July 29, 1972, and, because it differed from that of Kaplan, we believe the notice given of an intended closing on September 18, 1972, cannot be held to be valid. Thus, the trial court correctly refused defendants' objection that the notice served cancelled the contract.

Defendants' second objection to summary judgment is that O'Brien failed to obtain financing as required in the contract. They contend their covenant to convey was dependent on the requirement that plaintiff obtain within 30 days a commitment for financing or notify them of his inability to do so and, because neither was done, their obligation to convey never arose.

The major portion of the contract was dated July 29, 1972, and paragraph 4 thereof required O'Brien to attempt to obtain a firm commitment for a loan "within 30 days." Further, it provided that if purchaser was unable to obtain financing within that period "and so notified Seller thereof within that time," then the contract was to become null and void

with the purchaser's earnest money returned. Paragraph 5 stated that the time of closing was to be on September 1, 1972, or "20 days after notice that financing has been procured * * * (whichever date is later.)" Further, the contract provided that "Time is of the essence of this contract." Although these provisions are contained in the document dated July 29, 1972, and signed by plaintiff, the rider containing all necessary signatures was not completed until August 21, 1972.

As a general rule, a contract need not be contained in a single writing; it may be collected from several different writings which do not conflict with each other and which, when connected, show the parties, subject matter, terms, and consideration. (17 C.J.S. *Contracts* § 58 (1963).) Generally, a contract is operative as such from the time when there is a meeting of the minds, or when the last act necessary for its completion is performed. (17A C.J.S. *Contracts* § 359 (1963).)

Although the contract here was finalized and became mutually enforceable by the signing on August 21, 1972, a question remains concerning the intent of the parties as to whether obtaining a commitment for financing within the time specified was a condition precedent to the seller's duty to convey.

The dependence or independence of covenants in contracts for the purchase and sale of realty is a question of construction, determined primarily by the intention of the parties. (35 I.L.P. *Vendor and Purchaser* § 46 (1958).) Generally, agreements are dependent where performance by one party is conditioned on and subject to performance by the other. (17A C.J.S. *Contracts* § 344 (1963).) Covenants will generally be construed as dependent rather than as independent unless an intention to the contrary clearly appears, since such a construction ordinarily prevents one party from having the benefit of the contract without performance of his own obligation. (*Boyd v. Boyd*, 51 Ill.App.2d 220, 201 N.E.2d 244.) Accordingly, any conditions imposed by the contract as conditions precedent to a conveyance by the vendor must be first complied with by the purchaser before the latter may demand performance. *Cohen v. Kosden*, 402 Ill. 429, 84 N.E.2d 358; 35 I.L.P. *Vendor and Purchaser* § 45 (1958).

■■ Here, we are of the belief that the question of whether a loan commitment within the time specified was intended as a condition precedent presents a sufficient question of fact that should be decided in the trial court.

Further, we believe a question remained as to who may urge failure to obtain a mortgage commitment. As stated in 35 I.L.P. *Vendors and Purchasers* § 45 (1958):

"The question as to who may enforce or take advantage of a con-

dition in a contract for the sale of land depends on the intention of the parties as to the person or persons for whose benefit it was inserted and, as between the parties, a condition inserted solely for the benefit of one of them may or may not be enforced at the option of that party and cannot be taken advantage of by the other party." (Footnotes omitted.)

Defendants apparently believe that paragraph 4 was intended exclusively for the benefit of the purchaser and thus could be waived by him. We note, however, that paragraph 5 provides for time of closing on September 1, 1972 or "20 days after notice that financing has been procured * * * (whichever date is later.)" Thus, it would appear that notice of financing was necessary before the time for closing on any date other than September 1, 1972, could be determined and, for paragraph 5 purposes, this would appear to be a provision which may have been intended for the benefit of both parties and which therefore could not be unilaterally waived by the purchaser. In any event, the question posed related to a material fact in view of O'Brien's failure to notify defendant of his loan commitment or demand a closing until November 14, 1972.

Our belief is that this alternative provision in paragraph 5 for a closing date looked first to the eventuality of a closing date on September 1, 1972, since the 30-day period to obtain a loan commitment was written into the July 29 portion of the contract. A second construction, dating the 30-day period within which O'Brien was to obtain a loan commitment from the effective date of the contract August 21, 1972, could have looked to the eventuality of the purchaser's inability to obtain financing under the terms stated in paragraph 4, with the seller then obtaining financing for the purchaser within the additional 30-day period allotted him and the seller notifying the buyer of his success in finding such financing. Closing would then take place 20 days after this latter notice.

In any event, we do not believe the parties intended that the purchaser might delay for 2 months to get financing, or for so long as he so desired, and then send notice and demand a closing, as he did here, particularly in view of the fact that the parties have agreed that "Time is of the essence of this contract." Yet, this too is a question of the intent of the parties which must be decided on remand.

Since the record discloses that there remained genuine issues as to material facts, summary judgment in O'Brien's favor was improper.

■■ Finally, we note the general rule regarding brokers' commissions, enunciated by the Illinois Supreme Court in *Fox v. Ryan*, 240 Ill. 391, 396, 88 N.E. 974, 976:

"Where a broker is employed to sell property by the owner, if he produces a purchaser within the time limited by his authority who

is ready, willing and able to purchase the property upon the terms proposed by the seller he is entitled to his commissions, even though the seller refuses to perform the contract on his part. In such case, however, it is necessary for the broker to prove the readiness, willingness and ability of the purchaser to take the property on the terms proposed."

A prospective purchaser of realty will be considered ready, willing and able to buy if he has agreed to purchase the property and has or can command sufficient funds with which to complete the purchase within the time allowed by the offer. *Garrett v. Babb*, 24 Ill.App.3d 941, 945, 322 N.E.2d 217; *William C. Bender & Co. v. Tritz*, 338 Ill.App. 661, 88 N.E.2d 519.

■■ The record discloses O'Brien did not obtain financing until November 2, 1972. We have held there are unresolved questions as to the intent of the parties relating to the time within which financing was to be obtained and to the time for closing. In view of the foregoing, it appears that there are questions as to O'Brien's readiness and ability to purchase within the time allowed by the offer, and summary judgment in favor of the broker was likewise improper.

For the reasons stated, the separate summary judgments against defendants are reversed and remanded for further proceedings not inconsistent with the content of this opinion.

Reversed and remanded.

BARRETT, P. J., and LORENZ, J., concur.