Lauretta Uscian *et al.*, Plaintiffs and Counterdefendants-Appellants, *v.* Carmelo Blacconeri *et al.*, Defendants and Counterplaintiffs-Appellees.

First District (3rd Division) No. 61227

Opinion filed December 18, 1975.

Schmidt, DiMonte, Baker & Lizak, of Chicago (Eugene A. DiMonte and Alan L. Stefaniak, of counsel), for appellants.

Allan L. Blair, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Lauretta Uscian and Dorothea Moderhock, brought an action against defendants, Carmelo and Nancy Blacconeri, to have a certain real estate contract declared void and removed as a cloud on their title. Defendants filed a counterclaim for specific performance of the contract and damages. The trial court, sitting without a jury, initially denied the relief sought by plaintiffs and entered an order of specific performance in favor of defendants. After granting plaintiffs' petition for reconsideration, the court reversed its finding, denied specific performance, and declared the contract void. Upon further reconsideration, the court vacated the judgment in favor of plaintiffs and reinstated the order of specific performance. Plaintiffs appeal.

On October 20, 1973, the parties entered into a written contract for the sale of a certain parcel of land owned by plaintiffs. The contract was contingent upon defendants securing a firm contract for the sale of their residence located on Montrose Avenue in Chicago. The contract was also contingent upon plaintiffs obtaining approval from the City of Park Ridge to subdivide the subject property from adjoining property owned by them and not included in the sale.

On October 31, 1973, defendants fulfilled the first condition of the written contract by entering into a written contract for the sale of their Montrose Avenue property. The purchaser on the contract, Glen Davis, owner of a real estate company, was Mr. Blacconeri's employer. Davis knew that sale of the Park Ridge property was conditioned on city approval of the requested subdivision, and he orally agreed to release defendants from his contract if, by the beginning of December, it appeared that the subdivision would not be obtained.

On November 12, 1973, plaintiff Uscian appeared before the Park Ridge plan commission, and their application for a subdivision was denied. Defendants were present at the hearing and apprised of the commission's ruling.

Thereafter, on December 4, 1973, one of the plaintiffs contacted defendants and the parties orally agreed to sell the property without first obtaining a subdivision. Defendants informed Davis of the new agreement and told him that the sale of the Montrose Avenue property could be completed. Six days later, on December 10, plaintiffs through their attorney advised defendants that they had changed their mind and would not sell their property without first obtaining a subdivision from Park Ridge. A subdivision was not obtained and plaintiffs refused to consummate the sale of the Park Ridge property. On December 17, defendants recorded that contract. On January 2, 1974, defendants sold the Montrose Avenue property to Davis.

The trial court found that the parties had orally agreed to waive the subdivision requirement set forth in the written contract; that defendants materially changed their position in reliance on the oral representations; and that the agreement was supported by consideration. The court ordered that the written contract, as modified by the oral agreement, be performed.

Plaintiffs initially contend that the written contract was automatically terminated on November 12, 1973, when Park Ridge refused to allow subdivision of the property. In support of their position, plaintiffs cite the following contract provision:

"It is understood and agreed that sellers are trying to establish a subdivision. If the City of Park Ridge refuses to approve the subdivision by which sellers may sell the south 70' by 162' adjoined to the subject property so a structure can be erected thereon, this deal shall become null and void and the earnest money returned to buyers in full and this contract has no force or effect. The subdivision shall be effective on or before closing hereof. Closing to be January 4, 1974, or before as mutually agreed."

Under the express language of this provision, plaintiffs urge that the contract became null and void when the city rejected their application for subdivision. Defendants maintain that the contract remained in force until January 4 and final action by the city prior to that date was of no effect. Defendants point to that part of the clause requiring the subdivision to be effective by January 4 and insist that this requirement demonstrates that the parties intended the contract to remain in force until January 4.

The language of the subdivision contingency clause is clear and unambiguous and there is no need to resort to rules of construction or look to extrinsic facts to discern its meaning. The parties expressly agreed that if Park Ridge refused to approve a subdivision of plaintiff's property, the contract would become null and void. The provision is clearly designed

to protect plaintiffs' interest in the entire parcel of land in case their plan to subdivide and sell was not approved. The second condition, that the subdivision be effective before closing, is separate and distinct from the initial agreement, and, by defendants' admission, was inserted to protect them. The second condition requiring subdivision prior to closing does not modify or alter the initial agreement that refusal of the subdivision automatically terminated the contract. On November 12, 1973, Park Ridge rejected plaintiffs' application for a subdivision and, under the express terms of the agreement, the contract for the sale of the subject real estate was rendered null and void.

■■ Uncontroverted evidence establishes that plaintiffs continued to seek approval of a subdivision from Park Ridge after November 12. This conduct, defendants submit, supports their position that the contract remained in force and effect until the date set for closing. Where there is doubt as to the meaning of a contract the courts may look to the acts of the parties for aid in construction. Where a contract is clear and unambiguous, however, the conduct of the parties cannot be used to prove that the contract means something other than it says. (*Chicago Land Clearance Com. v. Jones* (1957), 13 Ill.App.2d 554, 142 N.E.2d 800.) The language of the subdivision clause is, in our opinion, clear and unambiguous and defendants' arguments on this point are untenable.

As the written contract automatically was terminated on November 12, the parties' agreement of December 4 constituted a new contract for the sale of plaintiffs' property. As the agreement was never reduced to writing, plaintiffs urge that the contract is within the Statute of Frauds (Ill. Rev. Stat. 1973, ch. 59, par. 2) and not enforceable in a suit for specific performance.

The Statute of Frauds requires that a contract to convey land be evidenced by a writing signed by the party to be charged. Although the Statute does not vitiate the oral contract, it denies the right to compel specific performance (*Stein v. McKinney* (1924), 313 Ill. 84, 144 N.E. 795), and a party sought to be charged with obligations under the oral contract may rely on the Statute as a defense. The parties' December 4 oral agreement for the sale of the property is clearly within the Statute, and the court erred in ordering specific performance.

Defendants argue, however, that plaintiffs waived their right to invoke the Statute of Frauds because they failed to plead this affirmative defense in their initial answer to defendants' counterclaim. Additionally, defendants urge that plaintiffs adduced no evidence as to the applicability of the Statute of Frauds, and that the trial court erred in allowing them to file an amended answer raising the defense.

Defendants correctly point out that section 43 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 43) expressly provides that the Statute of Frauds is an affirmative defense which must be set forth in the answer. However, section 46(1) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 46(1)) in part provides that: "At any time before final judgment amendments may be allowed on just and reasonable terms, * * * changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross demand." The decision as to whether to allow an amendment to the pleadings rests in the sound discretion of the trial judge and, absent an abuse of discretion, his decision will not be disturbed on review. (*Able v. Pure Oil Company* (1972), 8 Ill.App.3d 558, 290 N.E.2d 331.) Failure to plead an affirmative defense does not constitute waiver, and prior to entry of final judgment, the trial court, in its sound discretion, may permit a party to file an amended answer raising the affirmative matter. *Goulden v. Midwest Emery Freight* (1974), 21 Ill.App.3d 901, 316 N.E.2d 246.

■■ In the present case, plaintiffs' amended answer, though offered after proofs had been closed, was filed prior to the entry of final judgment. Both sides submitted briefs on the question of whether the Statute of Frauds was applicable and the trial court heard oral arguments on the issue. It is undisputed that the December 4 agreement was never reduced to writing and our examination of the record indicates that neither side could have presented more evidence for or against the applicability of the Statute. In view of all these facts, we conclude that the trial court did not abuse its discretion in permitting plaintiffs to file an amended pleading raising the Statute of Frauds as a defense.

Finally, defendants urge that even if the Statute of Frauds was properly raised, the defense is unavailable to plaintiffs in the present case. Citing *Mayo v. Mayo* (1922), 302 Ill. 584, 135 N.E. 90, and *Aldrich v. Aldrich* (1919), 287 Ill. 213, 122 N.E. 472, defendants submit that an order of specific performance must be upheld where the terms of an oral contract to convey land are proved by clear and convincing evidence. Here plaintiffs themselves testified as to the existence and terms of the oral agreement to sell the property. Defendants maintain that this clear and convincing evidence proves the existence of the contract in the terms alleged and takes the case out of the Statute of Frauds. Additionally, defendants claim that, under the facts of this case, it would be

virtual fraud to permit plaintiffs to interpose the Statute against defendants and that the defense cannot be allowed.

■■ Oral contracts to convey realty are enforced in certain cases. The remedy is allowed where one party to an oral contract has, in reliance thereof, so far performed his part of the agreement that it would be fraud to allow the other party to repudiate the agreement. (*Pocius v. Fleck* (1958), 13 Ill.2d 420, 150 N.E.2d 106; *Wessel v. Eilenberger* (1954), 2 Ill.2d 522, 119 N.E.2d 207.) The court may refuse to apply the Statute of Frauds where one party has contrived to defraud another in some act other than a contract of sale. (*Davito v. Blakely* (1968), 96 Ill.App.2d 196, 238 N.E.2d 410.) The moral wrong alone of refusing to be bound by an agreement because it fails to comply with the Statute, however, does not estop a party from asserting the Statute as a defense. *Loeb v. Gendel* (1961), 23 Ill.2d 502, 179 N.E.2d 7.

■■ The instant record indicates that the oral contract remained executory with mutual promises on both sides, and that neither party has performed any part of its obligations under the oral contract. Denial of specific performance works no fraud or inequity on defendants, and the doctrine of part performance does not take the contract out of the Statute of Frauds. Defendants' reliance on *Mayo v. Mayo, Aldrich v. Aldrich,* and *Wessel v. Eilenberger,* is not justified as those cases dealt with unilateral contracts in which one party had fully performed his side of the contract.

In view of our holding that the written contract was rendered null and void on November 12, 1973, and that the subsequent oral agreement of the parties is unenforceable under the Statute of Frauds, it is not necessary to consider the other arguments advanced by plaintiffs.

For the reasons stated, the order of the circuit court of Cook County granting specific performance to defendants is reversed. It is further ordered that the recorded contract is declared null and void and is removed as a cloud on plaintiffs' title.

Order reversed.

DEMPSEY and MEJDA, JJ., concur.