DARIEN PARK DISTRICT, Plaintiff-Appellee, *v.* CHARLES C. SCHMIDT *et al.*, Defendants-Appellees.—(LAMPLIGHTER REALTY CO. *et al.*, Defendants-Appellants.)

Second District    No. 77-146

Opinion filed April 25, 1979.

S. Louis Rathje and Gary L. Taylor, both of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellants.

Donald Kreger, of Friedman & Koven, of Chicago, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

This action was commenced on March 4, 1975, by plaintiff, Darien Park District, which filed a petition for the condemnation of 19 acres of real estate owned by defendants Charles C. Schmidt and Amelia Schmidt, his wife (hereinafter referred to as the Schmidts). Also named as defendants were Louis J. Osadjan and Paula Osadjan, his wife, who, together with Lamplighter Realty Company and Yale Development Company, which claim an interest through the Osadjans, will be hereinafter collectively referred to as Osadjan. The trial court determined that Osadjan had no

compensable interest in the condemned property and granted the Schmidts' motion to dismiss those defendants from the case. Osadjan appeals.

Osadjan asserts he has an compensable interest in the property and is entitled to share in the condemnation award by virtue of two agreements entered into between Osadjan and the Schmidts. The first agreement was executed by those parties on April 21, 1970, and entiled "Lease to Company." It described the conditions and circumstances under which Osadjan might purchase the south nine acres of the subject property from the Schmidts. On October 18, 1972, these parties executed a second document entitled "Real Estate Sales Contract" which similarly described the conditions and the circumstances upon which Osadjan could acquire the 10 acres of the Schmidts' property lying to the north and contiguous to the first parcel. These combined 19 acres made up the majority of the land which was the subject of plaintiff's petition for condemnation. The Schmidts were also the owners of other contiguous property to that which is directly involved in this case.

As resolution of this appeal is dependent upon any interest which may have been held in the subject property by Osadjan on March 4, 1975, when the condemnation proceedings were commenced by the park district (*e.g.*, *Department of Public Works & Buildings v. Schmauss* (1972), 6 Ill. App. 3d 470, 473, 285 N.E.2d 628, 630-31), we must review the two agreements in some detail. We note that the titles appended to them when entered into by the parties give little indication of their content or legal effect.

The agreement of April 21, 1970, together with its rider and addendum of May 17, 1970, included an express condition which required that Osadjan, described as the purchaser-lessee, secure rezoning of the nine-acre tract from its residential use classification to permit its use for business and commercial purposes and to secure building permits directed towards that use. The agreement provided that if the rezoning was not obtained within 18 months of its date the agreement would then be null and void and the Schmidts, described as the seller-lessor, could retain the $3,000 earnest money paid to them by Osadjan as liquidated damages. The agreement also provided that its term would be extended to a time 30 days after the final disposition of any legal action brought by Osadjan in attempting to secure the commercial use of the property as required of him by the agreement.[1]

---

[1] Osadjan's petition to rezone the property from residential to commercial use was denied by the Du Page County Board of Appeals and Board of Supervisors and action was then commenced in the circuit court challenging the county's decision. As the property was also subject to a residential classification under the zoning ordinance of the City of Darien, that too was challenged. On July 18, 1972, the trial court upheld the validity of the residential zoning of the property; its decision was affirmed by this court on September 2, 1975 (*Schmidt v. City of Darien* (1975), 31 Ill. App. 3d 617, 333 N.E.2d 678), and our mandate issued October 2, 1975.

This agreement also provided that "the time of closing shall be on or before two months after the purchaser has secured necessary zoning and permits * * *" and that if the desired zoning was obtained that Osadjan could then within 30 days elect to purchase from Schmidt the east half, west half or all of the 9-acre tract for $30,000 per acre. If Osadjan failed to elect to purchase some or all of the property then the agreement was to be considered a lease between the parties for a five-year period, at the conclusion of which Osadjan would be required to purchase all of the property at the agreed price.

The second agreement entered into between these parties on October 17, 1972, had similar terms. It was entitled "Real Estate Sales Contract" and by it Osadjan, described as the purchaser, was given until May 31, 1975, to secure rezoning of the property described therein from its single-family residential classification to one permitting a multifamily use. Osadjan further agreed by this document that the property it described (the 10-acre north parcel) would not be rezoned unless the property described in the earlier "Lease to Company" document (the 9-acre south parcel) was rezoned simultaneously. This agreement provided, as did the earlier agreement, that should Osadjan be unsuccessful in obtaining the zoning described within the time required the agreement would become null and void and all earnest money paid to the Schmidts by Osadjan would be retained by them as liquidated damages. Osadjan never filed an application with the local zoning authorities for multifamily use of the north parcel nor did he commence court action towards that end.

In summary, it would appear that on March 4, 1975, when plaintiff's petition for condemnation was filed, Osadjan had not secured rezoning of either portion of the subject property. By its terms the "Lease to Company" agreement became null and void on November 1, 1975, that being 30 days after final disposition of his legal action brought to secure commercial use of the property. The "Real Estate Sales Contract" became null and void by its terms on May 31, 1975. The record also discloses that the requisite rezoning had not been given to either tract by the expiration dates of the agreements.

Osadjan contends first that the agreements described as the "lease to Company" and "Real Estate Sales Contract" are valid executory contracts for the sale of real estate and as the purchaser under them he is entitled to share in the condemnation award. He relies upon *Stevenson v. Loehr* (1871), 57 Ill. 509, and *City of Chicago v. Robertson* (1964), 48 Ill. App. 2d 241, 198 N.E.2d 192, as authority for the argument he is a contract purchaser entitled to the compensation awarded for the taking of the subject property. In the same vein Osadjan contends that the doctrine of equitable conversion applied upon the execution of the agreements with

the Schmidts and vested the equitable estate in the property in the vendees leaving only naked legal title in the vendors which they hold in trust solely as security for the balance of the purchase price. *Shay v. Penrose* (1962), 25 Ill. 2d 447, 185 N.E.2d 218.

■■ We think Osadjan's reliance upon the principles discussed in *Loehr, Robertson* and *Shay* is misplaced. In each of those cases the vendor and vendee had entered into effective contracts for deed under which the vendee was entitled to receive the legal title upon payment of the balance of the installments of the purchase price to the vendor. The contracts in those cases contained no conditions precedent to be met before becoming effective (35 Ill. L. & Prac. *Vendor & Purchaser* §45 (1958)) and the vendor's remaining interest in the real estate was solely as security for the payment of the purchase money. In such circumstances, upon the taking of the property, the condemnation award takes the place of the property and both vendor and vendee may seek recovery of their respective interests from the award. (See *Robertson*, 48 Ill. App. 2d 241, 244, 198 N.E.2d 192, 193.) That clearly is not the situation before us in the present case where the agreements between the parties were subject to the express condition that Osadjan first secure zoning changes in the subject property. If he was successful in doing so within the times agreed upon then, and only then, did Osadjan's right to purchase any of the property emerge and only then did the duty arise in the Schmidts to sell to him. The agreements provided that if the condition Osadjan must meet to entitle him to purchase the property was not met that the agreements would become null and void and the earnest payment retained by the Schmidts as liquidated damages. It seems clear that the contracts for deed which gave rise to the compensable interest in real estate discussed in *Loehr, Robertson* and *Shay* did not exist here when the property was taken by the park district on March 4, 1975. See *Uscian v. Blacconeri* (1975), 35 Ill. App. 3d 80, 340 N.E.2d 618; *Masters v. Masters* (1927), 325 Ill. 429, 156 N.E. 481; *Gallagher v. Drovers Trust & Savings Bank* (1949), 404 Ill. 410, 88 N.E.2d 870.

■■ Osadjan also contends that further support for his right to the condemnation award is found in the "Lease to Company" agreement which provides in paragraph 11 that if any part of the devised premises is taken by exercise of the right to eminent domain that the lease will terminate or rentals thereunder abate proportionately and that the lessee will be entitled to any award for damages to his leasehold interest therein. A short answer to this argument is that as the zoning condition was not met neither the lease nor the contract for deed came into existence, and their provisions cannot now be relied upon by Osadjan as a basis for his claim to the condemnation award. *Pescaglia v. Gianessi* (1973), 9 Ill. App. 3d 582, 295 N.E.2d 148.

■ Osadjan next contends that the Schmidts could not rely upon the rezoning requirement of the agreements as it was a condition inserted therein solely for the benefit of Osadjan and could be waived by him. We do not agree that the language of these agreements lends itself to that construction. They provided in clear and unambiguous language that Osadjan could purchase the Schmidts' property only if he secured the requisite zoning for both parcels of real estate. Further, they provided a limited time period for Osadjan to meet that condition or the agreement would be considered null and void and his earnest money would be retained by the Schmidts as liquidated damages. The October 18, 1972, agreement provided specifically that the closing of the transaction for the sale of the real estate would be held within two months after Osadjan had secured necessary zoning and building permits; this represents substantial evidence that the agreements had not earlier ripened into a contract for deed that would sustain a compensable interest in the real estate on the part of Osadjan. His right to enter into a contract for the purchase of the Schmidts' land was conditioned upon the zoning requirement which he has never met.

■ Nor may Osadjan rely upon *O'Brien v. Kawazoye* (1975), 27 Ill. App. 3d 810, 327 N.E.2d 236, for the argument the rezoning condition was intended to benefit only the buyer and could be waived by him. In *O'Brien* the court noted that "any conditions imposed by the contract as conditions precedent to a conveyance by the vendor must be first complied with by the purchaser before the latter may demand performance. *Cohen v. Kosden*, 402 Ill. 429, 84 N.E.2d 358; 35 I.L.P. *Vendor and Purchaser* §45 (1958)." (27 Ill. App. 3d 810, 816, 327 N.E.2d 236, 241.) While in *O'Brien* it was necessary for the appellate court to remand the case to the trial court for a factual determination of whether the loan commitment within the time specified was intended as a condition precedent, in the present case the agreements entered into by the parties evidenced their clear intent that the rezoning requirement was a condition precedent imposed upon Osadjan before the other provisions of either agreement could be enforced. (See *Uscian v. Blacconeri* (1975), 35 Ill. App. 3d 80, 340 N.E.2d 618; *Celeste Italian Foods, Inc. v. Choyce* (1972), 9 Ill. App. 3d 361, 292 N.E.2d 177.) In our view there is no reasonable construction of these agreements which would permit the conclusion that the rezoning requirements contained in them were conditions solely for the benefit of Osadjan which could be waived by him. We note in that regard that Osadjan never took any steps to waive that requirement nor did he at any time seek to arrange for a closing of these transactions as he would have been authorized to do if the rezoning conditions had been met or waived.

Osadjan's next contention is based upon the provisions of section 14.1

óf the Eminent Domain Act (Ill. Rev. Stat. 1975, ch. 47, par. 14.1) which provides, essentially, that where property has been taken by condemnation a purchaser under a contract for deed may elect to either recover from the award the amounts he has expended under the contract or pay up the contract to the seller and receive all of the award.

■■ For the reasons we have previously discussed Osadjan may not avail himself of the provisions of this statute as he is not a purchaser under a contract for deed as described therein. The choices offered to a contract purchaser by the statute are not available to Osadjan; he could not choose recovery of his down payment, monthly payments or expenditures for improvements on the property as he made none of these payments. Nor would he be entitled to pay the contract price to the seller and receive the award as that would place him in the position of having met the rezoning condition precedent which he failed to do.

Osadjan's final contention in seeking to establish a compensable interest in the subject property is that on March 4, 1975, when the petition to condemn was filed, both of his agreements with the Schmidts were existing contracts and supported a compensable interest in the subject property. He points out that at the time of taking by the park district Osadjan still had about 27 days to secure multifamily use for the 10-acre tract before that agreement became null and void by its own terms on March 31, 1975, and that the denial of rezoning of the 9-acre tract by the local zoning authority and trial court did not become final until about November 1, 1975, on completion of his appeal. Osadjan does not state what the value of his interest might be in the circumstances but argues, without citation of authority, that it would be determined under the doctrine of the reasonable probability of rezoning.

While that doctrine is a proper factor to consider in determining the value of real estate taken by condemnation (*e.g., Department of Public Works & Buildings v. Association of Franciscan Fathers* (1977), 69 Ill. 2d 308, 371 N.E.2d 616), we see no basis for its application in this case where the contractual rights of the parties are in issue not the value of the subject property. At the time this property was taken by the park district Osadjan's contingent interest in it was remote. He had been denied necessary rezoning by the local authorities and the trial court as to one parcel and had not yet commenced to seek rezoning of the other parcel. We believe his interest was similar to that shown in *Fifer v. Allen* (1907), 228 Ill. 507, 521, 81 N.E. 1105, 1109, where an equally speculative interest in land taken was described as a "mere expectancy, not capable of being valued and which may never have any existence." In *Fifer* the court determined that appellant's contingent interest gave him no present estate in the subject property and held he was not entitled to the condemnation award. See also *Department of Public Works & Buildings v. Halls* (1966),

35 Ill. 2d 283, 220 N.E.2d 167; *In re Water Front on Upper New York Bay* (1927), 246 N.Y. 1, 29-34, 157 N.E. 911, 920-21; *Haney v. Estate of Denny* (1963), 135 Ind. App. 317, 193 N.E.2d 648; *In re Harper Woods* (1958), 353 Mich. 166, 91 N.W.2d 277.

■ As we have determined that the trial court did not err in finding Osadjan had no compensable interest in the subject property and properly dismissed those defendants from the case, we need not consider his remaining contentions of error.

Judgment affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.