J. M. Cooper, Appellee, v. Liberty National Bank of Chicago, Cross-Appellee. Abraham Kosdon and B. Lapine, Appellants.

Gen. No. 43,882.

Opinion filed November 13, 1947. Released for publication December 13, 1947.

Barnie E. Frankel, of Chicago, for appellants.

Mural J. Winstin and Edward J. Rothman, both of Chicago, for appellee.

Mr. Presiding Justice Friend delivered the opinion of the court.

The plaintiff, J. M. Cooper, brought suit against defendants for commission alleged to have been earned by him as a real estate broker for procuring a prospective purchaser of an apartment building owned by defendants and located at 4031 North Kenmore avenue in Chicago.

After issue had been joined by the filing of defendants' answers and their demand for trial by jury, plaintiff presented his motion and affidavit for summary judgment wherein he alleged in substance that he was a licensed real estate broker, that the defendants Abraham Kosdon and Benjamin Lapine were the beneficial owners of the premises in question held in trust by the Liberty National Bank of Chicago, that shortly prior to November 9, 1945, the individual defendants had employed him as a broker and agent to procure a purchaser of their improved real estate for the sum of $100,000 and agreed that if plaintiff would produce and procure such a purchaser they would pay him the sum of $1,750 for his services as broker, that pursuant to the employment he procured one Vivian Cohen as a prospective purchaser who entered into a written contract with Kosdon and Lapine for themselves and on behalf of the bank as trustee, and that by reason thereof he became entitled to the sum of $1,750 for his services and commission.

Attached to the complaint as an exhibit is a short printed and typewritten real estate sales contract wherein Vivian Cohen agreed to purchase and the Liberty National Bank agreed to sell on behalf of the individual beneficiaries the real estate in question for

$100,000.  The agreement recited that the purchaser had paid $5,000 as earnest money to be applied on the purchase when consummated, and she agreed therein to pay within five days after title was shown to be good the further sum of $30,000, and the balance of the purchase price according to the provisions of a rider attached to the agreement.  The sales contract and earnest money were deposited with the Chicago Title and Trust Company in escrow and provided, among other things, that the sellers were to pay "a broker's commission to J. M. Cooper in the amount of $1,750."

The rider attached to the sales contract and made a part thereof provided in substance that "the Sellers or the Purchaser shall procure a mortgage in a sum not to exceed Sixty Thousand Dollars ($60,000.00)" as the balance of the purchase price of $100,000 as stipulated in the sales contract, and that "In the event the mortgage commitment cannot be obtained for the amounts herein specified within forty days (40) from the date thereof, this contract shall be null and void and the money refunded that was herein deposited and all parties are to be placed in status quo as if no contract was entered into."

In their counteraffidavit defendants alleged, and it is not disputed, that they and the prospective purchaser diligently tried to procure a mortgage within the time contemplated in the sales contract, that through no fault of theirs or any of the other parties to the agreement they were unable to procure such a commitment within the time limitation, and that accordingly upon the expiration of the forty days and in pursuance of the terms of the agreement it became null and void and the purchaser then became entitled to a refund and return of the full amount of the earnest money deposited by her and all the parties were placed in status quo as if no contract had been entered into. Defendants further alleged that they at no time breached the agreement and that the "deal could not

be consummated because of the inability of the parties to procure in behalf of the purchaser the necessary money through a mortgage or mortgage commitment as called for in said contract.'' It further clearly appears from defendants' counteraffidavit that plaintiff was fully conversant with the provisions of the sales agreement and rider attached thereto and that he had full knowledge of the fact that if the mortgage financing could not be obtained the purchaser was to receive back the full earnest money deposited by her and the contract was to become null and void.

Upon these affidavits the court entered summary judgment in favor of plaintiff for $1,750, from which the defendants Kosdon and Lapine have taken an appeal.

It is urged on behalf of plaintiff, and the court evidently adopted the view, that a real estate broker's commission is earned when he tenders to the vendor a prospective purchaser who is accepted by the vendor and with whom the vendor enters into a binding and valid agreement, and plaintiff's counsel argue that this is true even though the actual transfer of the property is never made. Numerous Illinois decisions are cited, which go back to the early cases, holding in effect that where the seller accepts the purchaser and enters into a valid contract with him, the broker's commission is earned whether or not the purchaser performs his contract and makes the payments agreed upon. *Carter v. Webster,* 79 Ill. 435; *Wilson v. Mason,* 158 Ill. 304; *Fox v. Ryan,* 240 Ill. 391; *Friestedt v. Dietrich,* 84 Ill. App. 604; *Packer for use of Pettibone v. Sheppard,* 127 Ill. App. 598; *Myers v. Buell,* 142 Ill. App. 467; *Rushkiewicz v. St. George,* 226 Ill. App. 310; *Lucas v. Schwartz,* 243 Ill. App. 418; and *Chapman v. Illinois Midwest Joint Stock Land Bank of Edwardsville,* 302 Ill. App. 282. We have examined these cases carefully, and while they enunciate the prevailing rule in this State, none of the cases are applicable to the

undisputed circumstances shown in the case at bar. In none of the cases cited does the contract make the broker's commission depend upon any further action by either of the parties to the agreement; and that, it seems to us, is the gravamen of this controversy. It must be conceded from the affidavits presented that all of the parties, including the defendants, assisted in every possible way to procure a mortgage commitment, but were unable to do so within the period of forty days, and it was through no fault of defendants that the transaction failed. Moreover, when plaintiff produced Vivian Cohen as a prospective purchaser he knew that she could not buy the property for $100,000 unless a substantial mortgage was procured either by her or the defendants, and that the consummation of the deal depended on the obtaining of such a commitment either by the purchaser or the sellers. In fact paragraph 3 of the rider specifically provided that the "Sellers or the Purchaser shall procure [such] a mortgage." Plaintiff also fully understood that in the event the mortgage commitment could not be obtained for the amount specified within forty days the contract was to become null and void, and that the money deposited was to be refunded to the purchaser and all parties were to be placed in status quo as if no contract had been entered into.

None of the parties cite cases, either in Illinois or elsewhere, applicable to the foregoing facts, but upon examination of the authorities we find that the courts of several states have considered so-called conditional contracts of this kind and passed upon them. It may be conceded of course that the right to a commission under an ordinary brokerage contract is not defeated by the voluntary failure of the principal to complete the transaction, as where he has already sold or transferred the property involved to another after notice that the broker has a customer, but it is held otherwise where the transaction is dependent on

the obtaining of a loan or a lease or the consent of a landlord to an assignment of a lease. In such cases the agreement to pay commission is made dependent on the stipulated contingency, and when the broker acquiesces in such an arrangement, as he did in the case at bar, and reasonable and bona fide efforts are made on the part of the principals to perform the condition but are unsuccessful, the broker cannot recover. 12 C. J. S. Brokers § 95 (3) (p. 225).

A situation pertinent on the facts was considered by the Supreme Court of New Jersey in *Krim v. Sacks*, 7 N. J. Misc. 318, 145 Atl. 237. In that case plaintiff brought suit to recover a commission for the sale of a cigar, confectionery and stationery business which defendant had agreed to sell to two prospective purchasers under a written agreement entered into between the parties which was conditioned upon procuring a lease of the premises from the landlord. The written contract contained a provision that if the seller failed to secure the lease he was to return the earnest money which had been deposited and that the agreement was to become null and void. Upon the failure of the parties to procure the lease contemplated by the agreement the purchasers refused to take the store and the transaction was declared at an end. Nevertheless the broker claimed that a commission of five per cent was due him for procuring a prospective purchaser. In its opinion the court pointed out that, as in the case at bar, the broker was conversant with the terms upon which the agreement was made and therefore "he must be held to have tacitly acquiesced in the arrangement that there was to be no sale unless the lease could be procured, and, of course, if no sale was made, he was not entitled to any commission for having secured a purchaser." Accordingly the reviewing court affirmed the judgment of the trial court which had held adversely to plaintiff's claim.

In *Lieberman v. Farber,* 133 Misc. 833, 234 N. Y. S. 81, the per curiam opinion, which reversed a judgment for plaintiff, states the facts and legal conclusions of the court so briefly as to justify its quotation in full: "Plaintiff, a broker, was employed by defendant to sell his store conducted on leased premises. Plaintiff failed to find a purchaser at the price stipulated, but after negotiations defendant and the proposed purchaser agreed on a different price. Thereupon a contract was entered into between the purchaser and defendant the effectiveness of which was made dependent upon the consent of the landlord to the assignment of the lease. In this contract drawn by plaintiff there was a provision that plaintiff was the broker, and the seller agreed to pay him his commission. In our opinion the agreement to pay the commission and the agreement to sell the store were both dependent upon the consent of the landlord, which concededly was never given. Part of plaintiff's testimony serves to confirm this interpretation. Judgment reversed, with $30 costs, and complaint dismissed on the merits, with costs."

In *Boisseau v. Vallon & Jordano,* 174 La. 492, 141 So. 38, a contract whereby a real estate broker was to receive commission, even if no sale or exchange was effected, was held not binding on the principal where it appeared that the proposal was contingent upon the purchaser's ability to secure a loan on the residence which he sought to purchase. In that case the proposed purchaser had made it clear to the realtor that he had no cash on hand and that unless he could effect a loan of $9,500 he would not be able to go through with the transaction. Efforts to obtain such a loan were unavailing. As in the case at bar his offer was only conditional and the court held that since his proposal had been conditioned upon his ability to procure a loan and he had made bona fide efforts to do so with-

out success, the contract was properly ordered canceled. The agreement for commissions in that case was much broader than in any case which we have been able to find. It provided that in case of forfeiture of deposits, as stipulated in the contract, the total commissions earned by the agent should be paid out of the deposits, and even went so far as to provide that "The commission is earned on the signing of this agreement and shall not be affected by any subsequent agreement of the parties hereto or by the annulment of this contract by any court." The language employed left no doubt that the agreement contemplated Boisseau should pay the broker a commission even though his conditional offer could not be carried out due to his inability to secure the contemplated loan, and even if no sale or exchange could be made because the title to the property was not valid and could not in reasonable time and at reasonable expense be made valid. Notwithstanding these strong and unusual provisions enunciated for the protection of the broker the court held that "The words of this instrument are 'clear and explicit' that he was to pay these commissions, even though the motive and purpose which prompted him to sign it could not possibly be attained. But we cannot give effect to these provisions when to do so would lead to an 'absurd consequence.'"

A contract with provisions similar to the one under consideration in the *Boisseau* case was reviewed earlier by the Louisiana court in the case of *Eastbank Land Co., Inc. v. Hoffstetter*, 170 La. 594, 128 So. 527, where the court held that "The commission could only be earned and became due when the offerer obtained a person ready, willing, and able to buy on the terms stated in the offer, and this, as we have seen, was never done"; and in conclusion the court epitomized the situation in the following pertinent language: "It would be strange indeed to say that the

defendant owed the plaintiff a commission for making the offer to purchase.''

In the case before us paragraph 6 of the rider expressly provided for cancellation of the contract in the event the mortgage commitment could not be obtained, and in that sense is stronger than any of the cases hereinabove cited. In *Cameron v. Ayres,* 175 Cal. 662, 166 Pac. 801, the court held that an unconsummated loan is not ''negotiated'' simply when the broker as negotiating agent shows that he has found a lender ready and willing to advance the money, as he must also show that the lender was *able* to make the advancement.

We think these cases enunciate the correct and reasonable rule applicable to the present facts. They are not at variance with the elementary principles expressed in the decisions cited by plaintiff holding that a real estate broker is entitled to his commission when he has furnished a purchaser who is ready, willing and able to buy and with whom the principal enters into a valid contract. It is clear that in the case at bar Vivian Cohen, the prospective purchaser, was not ''able'' to buy defendants' apartment building unless a loan was obtained to supplement the sum of $40,000 which she was willing and able to invest in the transaction, and plaintiff, the broker who procured her as a prospective purchaser, was fully conversant with that fact and with the stipulation in the rider which provided that unless a commitment for a $60,000 mortgage was obtained the transaction would fail. Under the circumstances we do not think the cases relied on by plaintiff are at all applicable. This was a conditional contract, and it falls under the class of cases herein discussed.

In the view we take the court improperly entered summary judgment in favor of plaintiff, and such judgment is accordingly reversed; but inasmuch

as defendants did not ask for summary judgment, we would not be warranted in entering judgment in their favor here, and are therefore obliged to remand the cause with directions that such further proceedings be had as may be appropriate under the pleadings heretofore filed and the views herein expressed.

*Judgment reversed and cause remanded with directions.*

SCANLAN and SULLIVAN, JJ., concur.