HAROLD J. ROBERTSON, d/b/a Northside Realty, Plaintiff and Counter-defendant-Appellee, *v.* HAZEL STEIN REED, Defendant and Counter-plaintiff-Appellant.

Fourth District No. 13000

Opinion filed January 29, 1976.——Rehearing denied March 18, 1976.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (John E. Fick and William O. Martin, Jr., of counsel), for appellant.

Rosenberg, Rosenberg, Bickes & Johnson, Chtd., of Decatur (Wayne L. Bickes, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

The plaintiff Harold Robertson, d/b/a Northside Realty, filed suit against the defendant Hazel Stein Reed in order to collect a real estate broker's commission. The defendant Reed filed a counterclaim for damages due to the alleged breach of fiduciary duty by the plaintiff Robertson. A jury trial was held. The trial court denied the motion of the defendant Reed for a directed verdict on the complaint by the plaintiff Robertson and granted the motion by the plaintiff Robertson for a directed verdict on the counterclaim of the defendant Reed. The jury returned a verdict on the complaint in favor of the plaintiff Robertson and against the defendant Reed for the amount of $3904.80. The defendant Reed appeals.

There is no dispute that the plaintiff Robertson, d/b/a Northside Realty, was a licensed real estate broker; that the plaintiff Robertson employed a salesman named Jeter; that the defendant Reed and her family were long-time friends of the salesman Jeter; that the defendant Reed owned a life estate in a 162.7-acre farm and that her two sons owned the remainder interest; that the defendant Reed contacted the salesman Jeter in order to obtain a real estate listing of the farm; that a uniform listing agreement was signed by the salesman Jeter on behalf of Northside Realty and by the defendant Reed; that the defendant Reed's sons did not sign the listing agreement; that the agreement provided that the farm was for sale at a price of $1000 per acre for a period of 90 days with a 3% commission for the broker; and that no sale resulted from this listing agreement.

According to the defendant Reed, the salesman Jeter contacted the defendant to obtain a second listing agreement for the farm. Jeter told the defendant Reed that he had a prospective purchaser and that he needed the listing agreement in order to insure that he would collect his commission. The defendant Reed signed a second listing agreement which was for a 30-day period and which was in other important respects, including the price of $1000 per acre, the same as the first listing agreement. Again, Jeter signed the agreement on behalf of Northside Realty, and the defendant Reed's sons did not sign. Jeter procured two offers from two sources for $750 per acre which were rejected by the defendant Reed. Jeter then procured an offer for $800 from one of the same sources. The defendant Reed contends that the salesman Jeter then took advantage of his friendship with the defendant Reed and her family and pressured her into accepting the $800 per acre offer. The defendant Reed claims that on one Friday evening the salesman Jeter

came to the lounge which defendant Reed and her husband visited regularly on Fridays; that Jeter attempted to persuade her to accept the offer; that she rejected it; that she and her husband left the lounge and went to eat at the Elks Club; that Jeter followed them there and again attempted to convince her to take the offer; that she and her husband left and went to another lounge; that Jeter followed them once more and attempted to persuade her to accept; that she refused; that Jeter came to the house of the defendant Reed and her husband the following morning (Saturday); that Jeter again suggested that she accept; and that she finally gave in and signed the offer that Saturday morning. Further, the defendant claims that Jeter knew that the defendant owned only a partial interest in the farm and that the defendant did not have the authority to sell it. Thus, the written offer at $800 per acre was signed by both the prospective purchaser and the defendant Reed, and it was not signed by the defendant Reed's two sons. That same Saturday after learning of his mother's action, one of the defendant Reed's sons went to the offices of Northside Realty and informed Jeter that the "deal was off." According to the defendant, the signed offer was delivered to the prospective purchaser who later instituted a lawsuit against the defendant in order to force the sale of the farm to the prospective purchaser.

██ We begin our analysis by noting that a real estate broker is entitled to his commission when he enters into a listing agreement with a property owner and procures a purchaser who is ready, willing, and able to buy upon the terms proposed by the owner regardless of whether that owner holds the full interest (*Erbach and Haunroth Realtors v. Burnett*, 31 Ill.App.3d 236, 333 N.E.2d 592; *Ellis Realty v. Chapelski*, 28 Ill.App.3d 1008, 329 N.E.2d 370; *Haas v. Cohen*, 10 Ill.App.3d 896, 295 N.E.2d 28).

██ The defendant Reed asserts that there was not sufficient proof that the broker had procured a purchaser who was ready, willing, and able to buy the farm. The only evidence on this point was the testimony of the prospective purchaser himself to the effect that he was ready, willing, and able. However, the defendant has waived this issue. By signing the offer to purchase, the defendant accepted the prospective purchaser and is thereby precluded from denying that the purchaser was ready, willing, and able to buy the property (*Kliabanow & Co. v. Shafer*, 2 Ill.App.3d 392, 276 N.E.2d 446). Furthermore, even if the point were not waived, the only cases cited by the defendant to support her contention that such conclusionary testimony by the prospective purchaser is insufficient can be distinguished from the instant case. In both *Cabry v. Ionidas*, 122 Ill.App.2d 167, 258 N.E.2d 45, and *Apple-Cole Co. v. Shackel*, 324

Ill.App. 230, 57 N.E.2d 758 (abstract opinion), there was evidence to contradict the statement of the prospective purchaser that he was ready, willing, and able. In the present case, there was no evidence contrary to the purchaser's readiness, willingness, and ability to buy the farm. The testimony of the prospective purchaser was competent evidence and when uncontradicted was sufficient to support the finding of the jury.

■■ The major contention advanced by the defendant Reed is that she proved that the plaintiff Robertson, through his salesman Jeter, breached his fiduciary duty to the defendant. This argument is asserted as the basis for the defendant Reed's counterclaim against the broker for damages. The counterclaim makes sweeping allegations that Jeter pressured the defendant into reducing the listing price to consummate the transaction. However, there is no sufficient allegation or proof of fraud. The defendant also alleges that there was a breach of fiduciary duty because the signed purchase agreement was delivered to the prospective purchaser even though the defendant had instructed Jeter not to deliver it. However, there is no evidence that the defendant Reed instructed Jeter as claimed. To the contrary, the defendant admitted that she had not given such instructions to Jeter. One of the defendant's sons testified that he told Jeter that the "deal was off," but his testimony does not reveal that he purported to be acting on behalf of his mother or that he told Jeter not to deliver the agreement. Jeter's testimony did not disclose that he had been instructed not to deliver the agreement. Jeter testified that he called the defendant Reed immediately after being visited by her son and she hung up on him and that Jeter then went to the defendant's home to talk with her and was refused admittance. Upon motion by the plaintiff, the trial court directed a verdict against the defendant Reed on her counterclaim for breach of fiduciary duty, and the court's action was proper. When all of the evidence on the counterclaim is viewed in the light most favorable to the defendant, that evidence so overwhelmingly favors the plaintiff that no verdict for the defendant based on such evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.

Although two issues regarding rulings on evidence and instructions were briefed by the defendant, those issues were not argued at the oral argument, and we do not find enough merit in them to be worthy of further comment here.

Accordingly, the judgment is affirmed.

Judgment affirmed.

TRAPP, P. J., and SIMKINS, J., concur.