BRADLEY N. NELSON, d/b/a Available Real Estate, Plaintiff-Appellee, *v.* WILLIAM J. BOLTON, Defendant-Appellant.

Second District   No. 78-116

Opinion filed June 12, 1979.—Rehearing denied July 13, 1979.

Harry Schaffner and William Castillo, both of Elgin, for appellant.

Peter M. Donat, of Donat & Donat, of Batavia, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Bradley Nelson, a real estate broker, brought suit against defendant, William Bolton, for payment of real estate commissions allegedly due plaintiff from defendant. Following a bench trial, the trial court entered judgment in favor of plaintiff for $9000 but denied plaintiff recovery of a second commission in the amount of $3000. Defendant appeals from the entry of judgment in favor of plaintiff for $9000, and plaintiff cross-appeals from the denial of the $3000 commission.

On or about October 29, 1975, plaintiff and defendant entered into a one-year exclusive listing agreement for the sale by plaintiff of defendant's commercial real estate, located at 336 Webster Street, Batavia, Illinois. On June 3, 1976, defendant and Alex Jacobs signed two contracts to purchase real estate; these contracts were prepared by plaintiff, except for certain handwritten portions which were inserted by Jacobs.

The Jacobs (seller) to defendant (purchaser) contract (hereinafter referred to as sale No. 1) was for the sale of four parcels of vacant land, located on Seavy Road, Batavia. The parcels were shown on the plat of survey as Lots 1, 2, 6, 7 and 8; exact legal descriptions were to be clarified prior to closing. The contract provided that Jacobs would record a road easement "which extends to the easterly lot line of Lot No. 6, 7, 8." The purchase price specified in the contract was $100,000; immediately after the purchase price the words, "CONTINGENT UPON SALE NO. 2 WITH SELLER," were typed in. Further, the contract contained a provision that it was necessary for defendant to obtain within 21 days a commitment for a mortgage loan of $60,000; that if upon good faith effort the defendant could not obtain the mortgage, upon notice to Jacobs the contract became null and void. The contract specified that Jacobs would pay to plaintiff as the cooperating broker 50 percent of the real estate commission of six percent of the purchase price.

The defendant (seller) to Jacobs (purchaser) contract (hereinafter referred to as sale No. 2) was for the sale of the Webster Street property for $150,000. Immediately after the purchase price the words, "CONTINGENT UPON SALE NO. 1" were typed in. This contract contained a similarly worded financing clause as the one above, this one in the amount of $80,000 to be procured by Jacobs. Plaintiff, as specified in the contract, was to receive the full six-percent real estate commission from the defendant as there was no cooperating broker in sale No. 2. Both contracts had a July 1, 1976, closing date; however, the sales were never consummated, for reasons hereinafter set forth.

Defendant was called as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), and also as a witness on his own behalf. He testified that while he knew Jacobs as a customer, he had no meetings or conversations with him concerning the contracts prior to the time the contracts were signed; his dealings in that regard were solely with plaintiff. He had visited the Seavy Road property prior to the signing of the contracts but had not walked on the property due to the wet weather, and therefore was unable to determine its condition. He had no question as to the location of the parcels he was purchasing; however, the property had not been staked or plotted prior to June 3. Thereafter, defendant discovered a peat bog, located on Lots 6 and 7, affecting

approximately three acres of the property he was purchasing from Jacobs.

In the meantime, defendant had attempted to obtain financing for sale No. 1 at the First National Bank of Elgin (Elgin), and discussed the matter with William O'Rourke there. O'Rourke advised him that Elgin would require paper work showing that the land was profitable or that it could be subdivided in the manner intended; however, defendant was unable to obtain the required paper work for Elgin. Defendant did not attempt to obtain financing from any other financial institution. Towards the end of June, defendant informed plaintiff about the unavailability of financing, at which time plaintiff indicated that he could perhaps acquire the necessary financing for him. Plaintiff then delivered to defendant a letter from Jacobs, dated June 18, in which Jacobs offered to finance sale No. 1; the offer was open for one week. Defendant took no action concerning the offer, as he still intended to get the financing through Elgin when the paper work was complete; this, however, never occurred. Defendant did not recall receiving a letter from Jacobs dated June 26 withdrawing the offer of financing.

On or about July 2, 1976, defendant along with plaintiff, Jacobs, and several others met in the offices of A. L. Allen & Sons, Jacobs' listing broker, and discussed the existence of the bog in the back half of the property defendant was purchasing; also they discussed a change of location for the road easement, additional land to replace the bog, and defendant's inability to obtain a mortgage from Elgin before the soil conditions were cleared up. However, Jacobs refused to make any changes in the contract. After the meeting in Allen's office, plaintiff turned over to defendant the results of the soil boring tests. Based on those tests, the property was listed by the Conservation Department as unsuitable for development.

Alex Jacobs testified that he understood that the contracts for sale No. 1 and sale No. 2 were contingent on one another, and that both contracts were contingent on financing. He was first aware that the transactions were not going to close at the July 2nd meeting in Allen's office; at that meeting defendant expressed concern over the soil conditions of part of the property. Jacobs refused to agree to any modification in the contracts.

Jacobs' listing agreement with Allen provided that Jacobs would consider financing a capable purchaser. When plaintiff notified him that defendant was having difficulty obtaining financing, he drew up the June 18 letter, offering to finance sale No. 1; the offer was to remain open for seven days. Jacobs understood the contract to contain a provision whereby the seller would agree to finance the transaction with a purchase money mortgage, if the purchaser could not obtain financing. He sent a

letter, dated June 26, to plaintiff withdrawing the offer to finance after he had heard nothing from defendant or his agents.

Jacobs testified that he stood ready, willing and able to proceed with the contracts. On July 12, 1976, however, he sent a letter to plaintiff with copies to defendant's attorney and A. L. Allen's office, that he considered himself released from the contract.

On cross-examination, Jacobs testified that he had been aware of the peat bog on the property, at least as of January 5, 1976; that the proposed road easement went directly through the bog; and that a report from the Department of Agriculture's soil conservation service indicated that the land had severe limitations insofar as construction of a road is concerned. However, Jacobs had never told plaintiff of the existence of the bog or the limitations on road construction. Further, Jacobs testified that there were no legal descriptions pertaining to the specific lots to be included in the sale of land to defendant, although the property had been staked out by a surveyor; no deeds for the property were ever prepared and tendered; and no easement was ever recorded. An objection had been raised on the commitment for title insurance relating to a fence line and had been waived; however, neither defendant nor his attorney had been notified of the waiver.

In reference to the financing provisions of the contracts, Jacobs testified that he had obtained a loan commitment from First National Bank of Batavia (Batavia) for $95,000. All totaled, he would need $155,000 to satisfy the financing provisions in both contracts. He testified that he had "other equity" and that he intended to use defendant's contract obligation from sale No. 1 as collateral in obtaining another loan for the remaining balance of cash needed to close sale No. 2. However, he did not have the $155,000 himself, and he had not approached Batavia about such a loan. On redirect examination, Jacobs testified that he could have granted the road easement at any time, and he had all the necessary financing available to him to close both contracts.

Plaintiff testified that he and defendant had visited the property defendant wished to purchase from Jacobs at least twice prior to June 3; on those visits, he pointed out the property and showed defendant the approximate boundaries. According to plaintiff, defendant never informed him either orally or in writing that he was definitely unable to obtain financing. However, he did hand deliver Jacobs' offer of financing to plaintiff on June 18, 1976; later he received a letter from Jacobs withdrawing the financing; he assumed defendant was sent his own copy. Further, plaintiff testified that had the two contracts been completed he would have received $3,000 as the cooperating broker on sale No. 1 and $9,000 on sale No. 2 as he was the listing broker and there was no cooperating broker in sale No. 2. However, on cross-examination, he

testified that if the contracts did not proceed to closing he was not entitled to any commission.

Defendant contends that the trial court erred when in rendering its decision it found as follows:

> "4. Contingencies in an executed contract are between the parties and the broker is not involved unless he in some way participates in the contingencies."

In *Cooper v. Liberty National Bank* (1947), 332 Ill. App. 459, 75 N.E.2d 769, a broker sued the owner of an apartment building for his commission due for procuring a purchaser for the apartment building. The rider to the contract provided that a mortgage not to exceed $60,000 was to be obtained, and in the event the mortgage commitment could not be obtained, the contract was null and void. It was clear from the affidavits filed in the case that the broker was fully conversant with the provisions of the sales agreement and the rider attached thereto, and that he had full knowledge of the fact that if the mortgage financing could not be obtained, the contract was null and void. The reviewing court acknowledged that there were numerous decisions in Illinois holding in effect that where a seller accepts a purchaser and enters into a valid contract with him, the broker's commission is earned whether or not the purchaser performs his contract and makes the payments agreed upon; however, the court noted that in none of those cases did the contract make the broker's commission dependent on further action by either of the parties to the agreement. The reviewing court went on to state as follows in pertinent part:

> "* * * It may be conceded of course that the right to a commission under an ordinary brokerage contract is not defeated by the voluntary failure of the principal to complete the transaction, * * *, but it is held otherwise where the transaction is dependent on the obtaining of a loan or a lease or the consent of a landlord to an assignment of a lease. In such cases the agreement to pay commission is made dependent on the stipulated contingency, and when the broker acquiesces in such an arrangement, as he did in the case at bar, and reasonable and bona fide efforts are made on the part of the principals to perform the condition but are unsuccessful, the broker cannot recover. [Citation]." (332 Ill. App. 459, 463-64, 75 N.E.2d 767, 771.)

See also *Cabry v. Ionidas* (1970), 122 Ill. App. 2d 167, 258 N.E.2d 45; *Katz v. Brooks* (1965), 65 Ill. App. 2d 155, 212 N.E.2d 508.

■■ In the case before us, both contracts contained loan contingencies, and the two contracts were contingent on one another. Therefore it is clear that both loan contingencies must be satisfied before plaintiff would be entitled to his commission.

Jacobs had obtained a commitment for a loan from Batavia in the amount of $95,000; he was only required in sale No. 2's loan contingency to obtain a mortgage in the amount of $80,000. However, defendant's efforts at obtaining a mortgage at Elgin had failed, apparently due to the condition of the property and defendant's inability to obtain the proper paper work. While admittedly defendant did not pursue further avenues of financing, he apparently believed the paper work and/or reassurances that the property was suitable for his purposes, namely, subdividing, would be forthcoming, and no doubt other financial institutions would have requested the same information before making such a loan. As for Jacobs' offer, in effect to finance both transactions, he testified that he would need approximately $155,000 to finance both contracts, though he had only a loan for $95,000. While he had a plan for raising the additional $60,000 he had never taken any affirmative steps towards putting the plan into effect.

■■ Plaintiff argues that under Illinois law a real estate broker is entitled to his commission when he enters into a listing agreement with a property owner and procures a purchaser who is ready, willing and able to buy the property, on the terms proposed by the owner; further, that by signing an offer to purchase, a seller has accepted the prospective purchaser and is thereby precluded from denying that the purchaser was ready, willing and able to buy the property. (*Robertson v. Reed* (1976), 35 Ill. App. 3d 525, 341 N.E.2d 402.) However, the rule of waiver of the ready, willing and able requirement is applicable only where there has been affirmative evidence that the seller investigated the financial ability of the prospective buyer and after due investigation, satisfied himself of that ability, thereby waiving the conditions of readiness, willingness and ability to purchase. (*Wood v. Johnson* (1970), 130 Ill. App. 2d 552, 264 N.E.2d 260; *Cabry v. Ionidas.*) The record before us reveals no such affirmative evidence of investigations into the financial ability by or of either defendant or Jacobs.

■■ ■ Plaintiff argues, however, that there is no evidence to contradict Jacobs' testimony that he stood ready, willing and able to satisfy the financial obligations of both contracts. Referring again to Jacobs' offer of financing, it was his own testimony that of the $155,000 he had obtained only $95,000, with a plan for obtaining the balance. A buyer is financially "able" if he is shown to have sufficient funds on hand or the ability to command the necessary funds within the required time. (*Cabry v. Ionidas.*) A purchaser is not shown to have financial ability if he is depending upon third persons who are in no way bound to furnish the funds. (*Epstein v. Howard* (1955), 5 Ill. App. 2d 553, 558, 126 N.E.2d 162, 164.) Nor is it sufficient if the purchaser merely contemplates a scheme or plan to raise the needed funds, if the plan is "wholly problematical."

(*Adams v. Hall* (1912), 168 Ill. App. 569, 570.) Therefore, notwithstanding his firm commitment from Batavia for $95,000 and his "plan" for financing the two transactions, we are of the opinion that Jacobs was not shown to be an "able" purchaser for the purpose of concluding both transactions.

Nor do we find him a "ready" purchaser. We note that at the time set for closing, the legal descriptions of the lots had not been clarified; no deed for the property had been prepared; and though Jacobs testified he could grant the road easement at any time, it had not yet been recorded as required by the contract.

We conclude therefore that since the plaintiff was clearly aware of the contingencies contained in both contracts, which we have discussed in detail above and which the record shows were never satisfied, plaintiff was not entitled to the real estate commission of $9,000 awarded him by the trial court in sale No. 2.

Plaintiff has taken a cross-appeal from the trial court's order denying him recovery of the $3,000 commission from defendant on sale No. 1. Jacobs' property in sale No. 1 was listed with A. L. Allen and Sons and under the terms of the contract, plaintiff would receive 50 percent of the real estate commission as the cooperating broker. In denying plaintiff recovery of a real estate commission on sale No. 1, the trial court held that there was no privity of contract between plaintiff and defendant as regards sale No. 1.

Plaintiff relies on the California case of *Lane v. Davis* (1959), 172 Cal. App. 2d 302, 342 P.2d 267, which held that a real estate broker was a third-party beneficiary of a contract between buyer and seller as long as part of the contract was made expressly for his benefit, even though the broker was not named in the contract. Plaintiff argues further that since both contracts were contingent upon one another they were really one agreement for exchange and with both parties to the agreement specifying the amount due plaintiff in the transaction, privity of contract then exists.

We disagree. First of all, *Lane v. Davis* is factually distinguishable from the case before us for there the broker sued the seller who had specifically agreed to pay his commission. Here, plaintiff is suing defendant who is the purchaser in sale No. 1 for the commission on that sale; the contract for sale No. 1 as well as the contract for sale No. 2 specifically stated that the real estate commission was to be paid by the *seller*. Further, plaintiff himself testified that unless both contracts proceeded to closing he was not entitled to any commission. Finally, the same reasons for denying plaintiff a commission in sale No. 2 are equally applicable for denying his claim for commission in sale No. 1.

For all the foregoing reasons we affirm that portion of the trial court's order denying plaintiff the $3,000 commission in sale No. 1 and reverse

527

that portion of the order awarding plaintiff the $9,000 commission in connection with sale No. 2.

Judgment affirmed in part and reversed in part.

SEIDENFELD and RECHENMACHER, JJ., concur.