JOHN C. TELANDER *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* GEORGE H. POSEJPAL, Defendant-Appellant and Cross-Appellee.— (MICHAEL COAN *et al.*, Intervening Petitioners-Appellants and Cross-Appellees.)

Second District   No. 79-485

Opinion filed March 17, 1981.

Gary L. Taylor, of Rathje, Woodward, Dyer & Burt, of Wheaton, and Terrence E. Leonard, of Chicago, for appellants.

John R. Mackay and Joel R. Nathan, both of Wheaton, for appellees.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The present litigation involves four parties: John C. Telander, a general contractor and land developer who is president of Telander Brothers Contractors, Inc.; Joseph M. Jura, a real estate broker; George H.

Posejpal, the owner of a 54-acre farm which Telander contracted to buy and intended to develop as part of a planned unit development; and three architects, Michael Coan, Jesse Horvath and Bruce Liljeros, who did business as the Chicago Design Collaborative.

On May 7, 1973, the plaintiffs, Telander and Jura, brought suit against the defendant, Posejpal. In count I, Telander alleged that Posejpal had breached a real estate sale contract which Telander and Posejpal had entered into on April 28, 1972, while Jura alleged in count II that the defendant failed to pay him a real estate commission which was owing to him under the terms of the Telander-Posejpal contract. In his answer, Posejpal denied both that he had breached the contract with Telander and that Jura was entitled to a broker's commission. In addition, Posejpal counterclaimed against Jura, alleging that he had loaned Jura $5,000 which was to be applied toward the purchase price of a piece of property, known as the Johnson farm, which Jura had contracted to buy and that Jura had failed to repay the loan. On May 21, 1975, the three architects, Coan, Horvath and Liljeros, petitioned the court to intervene in the litigation involving Telander, Jura and Posejpal. In their petition to intervene and accompanying complaint, they alleged that Telander had refused to pay them for certain architectural services which they had rendered the plaintiffs. The court subsequently granted the petitioners leave to intervene.

After a bench trial, the court found that there was no contract between Telander and Posejpal after September 30, 1972, but awarded Telander a $25,000 recovery on the basis of *quantum meruit*. The court also denied Jura's claim for a broker's commission and likewise denied Posejpal's claim against Jura for damages occasioned by the failure of Jura to repay the alleged $5,000 loan. The court further determined that Telander and the intervening petitioners had not entered into a contract for architectural services but awarded the three architects recovery in the amount of $10,000 on the basis of *quantum meruit*.

Posejpal appeals from the judgment awarding Telander $25,000 as well as from the denial of his claim for $5,000 damages against Jura. Jura cross-appeals from the denial of his claim for a broker's commission, while Coan, Horvath and Liljeros appeal from the order granting them $10,000 recovery in *quantum meruit*. In addition, Telander cross-appeals and asserts that Posejpal did not have the right to declare the April 28, 1972, contract null and void and, further, that the architects should have been denied all recovery since their claim did not involve Telander personally.

Evidence in the record indicates that John C. Telander and George H. Posejpal entered into a written real estate sale contract, dated April 28, 1971, whereby Telander agreed to purchase and Posejpal agreed to sell a

54-acre parcel of land (the Posejpal farm). The contract was apparently terminated by the seller on April 28, 1972. On April 28, 1972, Telander and Posejpal entered into a second real estate contract which involved the same parcel of land. It is this contract which forms the basis for the present lawsuit. In pertinent part, the April 28, 1972, contract provided that it was subject to the condition that the purchaser be able to procure within 150 days a firm commitment for a loan acceptable to the purchaser and, further, that the contract was contingent upon the purchaser being able to secure rezoning of the subject property which was acceptable to the purchaser within the time limit set forth in paragraph 7 of the "Conditions and Stipulations." The purchaser was to assume all costs, fees and expenses attendant to the rezoning matter. Paragraph 7 stated that time was of the essence and that "[i]t is mutually understood that September 30, 1972, is the final date for rezoning and financing to be obtained and if said conditions are not met within that time this contract is null and void." The contract also provided that the time of closing would be 30 days after the purchaser notified the seller that financing had been procured, in the absence of a mutually agreeable extension of time. Furthermore, the seller agreed to pay Joseph Jura, at the time of closing, a broker's commission of five percent of the gross sale price prior to prorations. Finally, paragraph C of Rider A to the contract provided that in lieu of a cash payment at closing, the seller had the right or option to require the purchaser to buy certain real estate which would then be exchanged for the Posejpal farm, and the seller agreed to cooperate with Joseph Jura "in such manner that Jura can act in the capacity of real estate broker for the purchaser."

In his complaint for breach of contract and at trial, Telander asserted that Posejpal made certain statements prior to September 30 and took certain actions subsequent to September 30 which indicated that the seller had orally agreed to waive the requirement that financing be completed by September 30, 1972. Telander further alleged in his complaint and argued in the court below that Posejpal had orally agreed to extend the April 28, 1972, contract, with certain amendments or changes, beyond September 30, 1972, and that the seller breached the contract when he failed to close the transaction on February 15, 1973.

With respect to these claims, the trial court determined that there was no contract between Telander and Posejpal after September 30, 1972, and that dealings between the parties were negotiations for a new contract which never materialized. These findings are not contrary to the manifest weight of the evidence and will not be disturbed on appeal. Given the fact that the testimony adduced at trial was conflicting and contradictory, the trial judge as trier of fact was in a superior position to hear and weigh the evidence and determine the credibility of the witnesses. *Schulenburg v.*

*Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356; *Wainwright v. Lyons* (1979), 73 Ill. App. 3d 1043, 1045; *Ross v. Steiner* (1978), 66 Ill. App. 3d 567, 572, 574.

The trial court awarded $25,000 to Telander under the doctrine of *quantum meruit* on the grounds that Telander had secured a consent decree entered into by Telander, the defendant and other landowners on the one hand, and the County of Du Page on the other and thereby effected a rezoning of the defendant Posejpal's property to allow for a planned unit development that consequently substantially increased the value of Posejpal's property.

The general principles underlying recovery on the basis of *quantum meruit* are well settled:

> "A contract implied in law is equitable in its nature and is one which reason and justice dictate. It does not arise from an intent to contract or a promise to pay. It exists where there is a plain duty and a consideration. The consideration may be a parting with something by the party seeking to enforce the contract; the promise is presumed so that there will not be a failure of justice. Its essential element is the receipt of a benefit by one party which would be inequitable for that party to retain. It is predicated on the fundamental principle that no one should unjustly enrich himself at another's expense. [Citations.]" (*First National Bank of Lincolnwood v. Glenn* (1971), 132 Ill. App. 2d 322, 324; *Comm v. Goodman* (1972), 6 Ill. App. 3d 847, 854; see *Rutledge v. Housing Authority* (1980), 88 Ill. App. 3d 1064, 1069; *Elliott. v. Villa Park Trust & Savings Bank* (1978), 63 Ill. App. 3d 714, 717.)

Both Posejpal and Telander agree that a crucial inquiry here is whether the defendant received any benefit as a result of the purported rezoning of the Posejpal property. Posejpal argues that the actions of Telander did not confer any benefit upon him and thus the trial court erred in entering the judgment of $25,000 in favor of Telander.

The consent decree in question found that Telander Brothers Contractors, Inc., and its assigns should be permitted to develop the proposed site as a planned unit development and ordered that "Telander Bros. Contractors, Inc., its successors and assigns," be permitted to use the subject property for a planned unit development. Contrary to Telander's assertion, the consent decree did not rezone the defendant's property but merely ordered that it could be used as part of the planned unit development. Moreover, by the express terms of the consent agreement between the parties, any benefits flowing from the consent decree were limited to Telander Brothers Contractors, Inc., and its successors and assigns; it is manifest that the consent decree itself conferred no benefit upon Posejpal. Furthermore, although the consent decree itself does not

specifically set forth the area which may be developed as a planned unit development, other evidence in the record reveals that the development comprised a 78-acre parcel, which included the defendant's farm property. Thus, even if the defendant were able to benefit from the consent decree, he would not be able to develop his property as a planned unit development unless he did so in concert with the other property owners whose land was included in the consent decree. Finally, any insinuation by Telander in his brief that the defendant sold his farm and secured a much higher price for his 54 acres as a result of more desirable zoning is unfounded. In addition to the fact that there is no evidence that the defendant's property was ever rezoned, counsel for Telander admitted in the trial court that the 54-acre Posejpal farm was in the same state that it was six years ago (1972) and had not been sold by Mr. Posejpal.

Given the above facts, we conclude that the defendant derived no benefit from the consent decree. A reviewing court has a duty to reverse a judgment where the findings are clearly and palpably against the manifest weight of the evidence. (*Drovers National Bank v. Great Southwest Fire Insurance Co.* (1977), 55 Ill. App. 3d 953, 956; see *City of Chicago v. Abdullah* (1979), 76 Ill. App. 3d 325, 329.) For a finding or judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. (*Comm v. Goodman* (1972), 6 Ill. App. 3d 847, 853.) In the present case, the trial court's implicit finding that Telander conferred a benefit upon the defendant as a result of the consent decree lacks support in the evidence and is contrary to the manifest weight of the evidence.

■■ Defendant also asserts on appeal that *quantum meruit* was improperly granted because the contracts which had existed between Telander and Posejpal during the time that the alleged rezoning was secured expressly provided that Telander was to assume all costs and expenses attendant to the rezoning. Posejpal correctly argues that since an express contract existed between the parties, a provision of which governed who was to pay the rezoning expenses, a contract implied in law could not coexist with the express contract. (*Goodman v. Motor Products Corp.* (1959), 22 Ill. App. 2d 378, 384.) Thus, we conclude the trial court erred in entering judgment in favor of Telander and against Posejpal in the amount of $25,000 on the basis of *quantum meruit.*

Defendant Posejpal also asserts that the trial court erred in denying his counterclaim against Jura in which he sought $5,000 damages as recompense for Jura's failure to repay the $5,000 loan which the defendant alleges he made to Jura. In denying the defendant's counterclaim, the trial court did not make any factual findings or state a reason for its decision. For the reasons set forth below we believe the trial court erred in denying the defendant's counterclaim.

The record indicates that, as provided in the contract, the defendant directed Telander to purchase the Johnson farm which was located in De Kalb County and exchange it in partial consideration for the purchase by Telander of the Posejpal farm. Uncontradicted testimony indicates that neither Telander nor Jura was able or willing to supply the $5,000 earnest money which was to be applied toward the purchase price of the Johnson farm and that Jura asked the defendant if he would loan him the $5,000. Mr. Posejpal gave his wife a check for $5,000 (check no. 983) which she endorsed with the notation that a cashier's check (check no. 40953) was issued to Joe Jura to apply toward the farm in De Kalb County. Mrs. Posejpal secured a cashier's check in the amount of $5,000 (check no. 40953) which was made payable to herself. Jura filled out in his own writing and signed a receipt which indicated he had received a $5,000 loan from the defendant for the De Kalb farm. Mrs. Posejpal testified she gave the earnest money to Jura. Jura secured a cashier's check in the amount of $5,000 (check no. 43812) which was made payable to Roy Dudley, realtor, and the Posejpals delivered this check to the office of Dudley. Subsequently, Jura entered into a contract with the Johnson estate which indicates that he paid $5,000 down as earnest money.

In attempting to rebut Posejpal's claim that he is entitled to repayment of the $5,000, Jura argues (1) that he entered into the contract with the Johnson estate to buy the Johnson farm as the nominee of Posejpal and (2) that Jura never received the alleged $5,000 loan. We believe the facts and circumstances, as shown by the evidence, demonstrate that Jura's counterarguments are devoid of merit. In the first place, the September 1, 1972, contract which Jura signed indicates that he entered into the agreement to purchase the Johnson farm on his own behalf and not as a nominee or in any other representative capacity. Furthermore, the exchange of property option contained in paragraph C of Rider A to the April 28, 1972, agreement between Telander and Posejpal indicates that Jura was acting as the real estate broker, or agent, of Telander with respect to the purchase and trade of any real estate to be used as consideration for the sale of the Posejpal farm. Moreover, the very nature of the exchange agreement supports Posejpal's testimony that he did not intend to buy the Johnson farm but rather directed Telander to buy it and trade it as partial consideration for the purchase of the Posejpal property. It borders on the absurd to suggest that Posejpal unconditionally parted with $5,000 in the form of a down payment on property he was going to receive as partial consideration for the sale of his own farm to Telander.

With respect to the receipt of the $5,000, the overwhelming evidence and reasonable inferences to be drawn from the evidence indicate that Jura did receive $5,000 in the form of a loan which was to be applied as earnest money toward the purchase price of the Johnson farm. In this regard, Jura admitted filling out and signing the loan receipt which

indicated that he had accepted a $5,000 loan from the defendant. The contract which Jura signed with the Johnson estate states that he paid $5,000 as earnest money. Although Jura denied personally receiving the $5,000, his testimony is contradicted by that of Mrs. Posejpal. Furthermore, in his opening statement counsel for Jura indicated that the defendant had given Jura $5,000 as a down payment on the Johnson farm. In addition, the reasonable inference to be drawn from Mrs. Posejpal's testimony and the check receipts which were introduced into evidence is that the defendant's wife endorsed cashier's check no. 40953 and gave it to Jura. The record indicates that Jura then remitted a cashier's check in the amount of $5,000 made payable to Roy Dudley.

Given the totality of the facts and circumstances of this case, we conclude as a matter of law that the defendant loaned Jura $5,000, Jura accepted the $5,000 loan and that he has never repaid the $5,000 to the defendant. The trial court erred in denying the defendant's counterclaim.

In his cross-appeal, Telander asserts that the trial court erred in determining that the Telander-Posejpal agreement of April 28, 1972, became null and void on September 30, 1972. The only argument or issue he raises in this regard is that the financing provision of the April 28 contract was an independent covenant that could be waived or enforced only by Telander, and hence the contract could not be declared null and void by Posejpal or by its own terms as a result of Telander's failure to comply with the September 30 deadline for obtaining a firm commitment for a loan.

■■ After a careful review of the record, we find no reference to Telander's argument advanced on appeal that the financing provision or condition was an independent covenant which could be waived or enforced by Telander. The defendant was not asked to defend against such a theory at trial, nor was the trial court presented with the theory or asked to rule on it. Thus, the plaintiff cannot now raise this issue for the first time on appeal. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147; *Skyrise Apartments, Inc. v. City of Rockford* (1980), 83 Ill. App. 3d 447, 449; *Vournazos v. Vournazos* (1979), 71 Ill. App. 3d 672, 677.

Even if this issue were properly before us, Telander's contention lacks merit for the reasons set forth below. To recapitulate, the contractual arrangement which Telander and Posejpal entered into on April 28, 1972, stated that the contract was subject to the condition that Telander be able to procure within 150 days a firm commitment for a loan which was acceptable to Telander. Contrary to Telander's assertion on appeal that the financing provision was inserted solely for his benefit and could be enforced only by him, the "a loan acceptable to purchaser" language of the contract cannot be construed as an intention of the parties to create an independent covenant given the facts and circumstances of this case as well as other language in the April 28 agreement. In the first place, the

April 28, 1972, contract was the second such agreement between the parties. Apparently the first contract, dated April 28, 1971, became null and void on April 28, 1972, when Telander failed to obtain rezoning and financing within the 365-day period set forth in the contract. When the parties executed the second contract, they shortened the financing contingency period to 150 days, agreed that time was of the essence, that September 30, 1972, was the final date of obtaining financing and that if such condition were not met within the time, the contract would be null and void. In light of the above, it was not the intent of the parties that Telander might delay a closing. See *O'Brien v. Kawazoye* (1975), 27 Ill. App. 3d 810, 817.

As part of his agreement, Telander also asserts that Posejpal could not rely upon the financing requirement of the agreement as it was a condition inserted therein solely for the benefit of Telander and could be waived only by him. The short answer to this contention is that at no time did Telander take any affirmative steps to waive the financing provision or arrange for a closing by October 30, 1972 (which was the last day for such closing to occur under the terms of the contract), as he would have been able to do if the financing condition had been waived. (See *Darien Park District v. Schmidt* (1979), 71 Ill. App. 3d 151, 156.) *Nyder v. Champlin* (1948), 401 Ill. 317, cited by Telander, is distinguishable from the case at bar on a number of significant grounds.

In his cross-appeal, Jura contends that the trial court erred in denying his claim for a five percent broker's commission, since the Telander-Posejpal contract of April 28, 1972, expressly provided he was to receive such a commission. He maintains that he was entitled to his commission whether or not Posejpal had a right to terminate the real estate sale contract, because Telander was ready, willing and able to purchase the Posejpal property.

The general rule with reference to the broker's right to a commission is well settled:

> "Where a broker is employed to sell property by the owner, if he produces a purchaser within the time limited by his authority who is ready, willing and able to purchase the property upon the terms proposed by the seller he is entitled to his commissions, even though the seller refuses to perform the contract on his part. In such case, however, it is necessary for the broker to prove the readiness, willingness and ability of the purchaser to take the property on the terms proposed." *Fox v. Ryan* (1909), 240 Ill. 391, 396; *Rodes v. Preston Corp.* (1978), 61 Ill. App. 3d 599, 609, *cert. denied sub nom. Rodes v. Pristo* (1979), 441 U.S. 951, 60 L. Ed. 2d 1056, 99 S. Ct. 2179; *O'Brien v. Kawazoye* (1975), 27 Ill. App. 3d 810, 817-18.

■■ A prospective purchaser of real estate will be deemed ready, willing

and able to purchase if he has agreed to buy the property and has sufficient funds on hand or if he is able to command the necessary funds with which to complete the purchase within the time set by the offer. (*Nelson v. Bolton* (1979), 72 Ill. App. 3d 519, 525; *Rodes v. Preston Corp.* (1978), 61 Ill. App. 3d 599, 609, *cert. denied sub nom. Rodes v. Pristo* (1979), 441 U.S. 951, 60 L. Ed. 2d 1056, 99 S. Ct. 2179; *O'Brien v. Kawazoye* (1975), 27 Ill. App. 3d 810, 818; *Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 945.) More specifically, where, as here, a transaction is dependent upon the obtaining of a loan, the agreement to pay a real estate commission is made dependent on the stipulated contingency, and where the broker acquiesces in such an arrangement and the parties are unable to perform the condition after reasonable and *bona fide* efforts to do so, the broker cannot receive his commission. (*Nelson v. Bolton* (1979), 72 Ill. App. 3d 519, 524; *Cooper v. Liberty National Bank* (1947), 332 Ill. App. 459, 463-64.) However, where the broker establishes that the defendant waived the ready, willing and able requirement, the broker is entitled to recover the commission. (See *Cabry v. Ionidas* (1970), 122 Ill. App. 2d 167, 172-73.) Waiver of the ready, willing and able requirement is applicable only where there has been affirmative evidence that the seller investigated the financial ability of the prospective buyer and after due investigation satisfied himself of that ability, thereby waiving the conditions of readiness, willingness and ability to purchase. *Nelson v. Bolton* (1979), 72 Ill. App. 3d 519, 525.

It is clear from the record in this case that Telander, as the prospective purchaser, was not able to secure the necessary financing prior to September 30, 1972, or prior to the date of closing and thus was unable to complete the purchase in accordance with the express terms of the then-existing contract. Telander's own testimony indicates that he was not able to secure adequate financing until December of 1972. Thus, this court is not presented with a case where the purchaser had on hand or could command sufficient funds to purchase the property upon the terms agreed to by the seller thereby entitling the broker to a commission. (Compare *Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 945-46.) In addition, the record indicates that the broker was fully conversant with the provisions of the sale agreement and had full knowledge of the fact that the contract would be null and void if the financing could not be obtained. Since Jura was clearly aware of the contingency relating to financing which the record shows was never satisfied by Telander, Jura was not entitled to the real estate commission. (*Nelson v. Bolton* (1979), 72 Ill. App. 3d 519, 526.) Furthermore, waiver of the ready, willing and able requirement is not applicable in the present case since the record before the court is devoid of any affirmative evidence that Posejpal investigated the financial ability of Telander and satisfied himself of that ability. Nor is the trial court's explicit finding that Posejpal did not waive the condition

that Telander secure a firm loan commitment prior to September 30, against the manifest weight of the evidence. Also, this is not a case where the defendant was unjustly enriched at the expense of the broker, since the land was not sold and there is no evidence the defendant benefited from the services of the broker. Compare *Nardi & Co., Inc. v. Allabastro* (1974), 20 Ill. App. 3d 323, 327-28.

*Robertson v. Reed* (1976), 35 Ill. App. 3d 525, 527-28, and *Wolfenberger v. Madison* (1976), 43 Ill. App. 3d 813, 815-16, cited by the plaintiff, are distinguishable from the case at bar, because in those cases the purchaser presented affirmative testimony or other evidence of his willingness and ability to perform which was uncontroverted.

The trial court did not err in denying Jura's claim for a broker's commission.

Finally, we consider the judgment in the amount of $10,000 which the trial court awarded the architects, Coan, Horvath and Liljeros, against Telander under the theory of *quantum meruit*.

■■ Both parties have appealed this judgment. While the architects agree with the trial court's determination that they had established a basis for recovery under this theory even though they did not plead it, they contend that the award to them of $10,000 has no basis in the evidence and that they were entitled to their claim of $50,653.58 as the reasonable value of the services they rendered. Under the doctrine of *quantum meruit*, the extent of liability on the contract implied by law is predicated on the reasonable value of the services performed. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 486.) Under the evidence in this case, the award of damages for services rendered by the architects in the sum of $10,000 has no relationship to the value of the services performed and is contrary to the manifest weight of the evidence and for that reason the amount of the award should be set aside if the trial court's judgment were to be otherwise affirmed.

■■ ■ Our review of the record, however, makes evident that the trial court erred in finding for the architects and against Telander on the basis of *quantum meruit*. Under the doctrine of *quantum meruit*, the law implies a contract where none exists in order to prevent one from retaining a benefit which would be unjust for him to retain without paying for it. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 486.) Here the trial court found no contract in existence between Telander and the architects. Telander asserts, however, that there was a contract in existence between the architects and Telander Brothers Contractors, Inc., covering the architectural services upon which their claim against him is based. The overwhelming weight of the evidence bears Telander out. This is not a case where the architects rendered services without a contract, but rather the evidence strongly

indicated that the architects rendered their services pursuant to a contract with Telander Brothers Contractors, Inc. Having rendered services pursuant to that contract, the architects cannot recover against Telander individually on the basis of *quantum meruit*.

There is another reason why the judgment against Telander on the ground of *quantum meruit* cannot lie. There is considerable question as to whether Telander received any benefit from the work performed by the architects, and, therefore, whether he was unjustly enriched as a result of their services. The basis of the claim of unjust enrichment rests on the assertion that Telander succeeded in getting the property in question rezoned in part as a result of the work of the architects. Telander did not and does not own the property and after September 30, 1972, had no contractual or other interest in the property and, therefore, received no benefit from the alleged rezoning. Further, the evidence reflects that such alleged rezoning as was obtained was received, not by Telander, but by Telander Brothers Contractors, Inc.

The judgment in favor of the architects and against Telander is against the manifest weight of the evidence and is therefore set aside.

To summarize:

(1) The findings of the trial court: (a) that there was no contract between Telander and Posejpal after September 30, 1972, and (b) that the dealings between Telander and Posejpal subsequent to September 30, 1972, were negotiations for a new contract which never materialized are not against the manifest weight of the evidence and are affirmed.

(2) the judgment awarding John C. Telander the sum of $25,000 against George A. Posejpal is reversed;

(3) the judgment of the trial court in favor of cross-defendant Joseph M. Jura and against cross-plaintiff George A. Posejpal is reversed and judgment is entered in favor of counter-plaintiff George A. Posejpal and against counter-defendant Joseph M. Jura in the sum of $5,000 and costs;

(4) the judgment of the trial court in favor of the counter-defendant George A. Posejpal and against the counter-claimant Joseph M. Jura for a 5% broker's commission is affirmed; and

(5) the judgment of the trial court in favor of the intervening petitioners Michael Coan, Jessie Horvath and Bruce Liljeros and against the defendant John C. Telander is reversed.

Affirmed in part, reversed in part.

SEIDENFELD, P. J., and REINHARD, J., concur.